640 F.2d 843
 Paul and Joyce STURGELL, Plaintiffs-Appellants,
v.
Kenneth B. CREASY, Director, Ohio Department of Public
Welfare; Ohio Department of Public Welfare; Joseph A.
Califano, Jr., Secretary of Health, Education and Welfare;
and Department of Health, Education and Welfare, Defendants-Appellees.
 No. 78-3548.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 17, 1980.
Decided Feb. 11, 1981.
 
 1
 Bruce E. Friedman, Concord, N. H., Clement W. Pyles, Ohio State Legal Services Association, Columbus, Ohio, for plaintiffs-appellants.
 
 
 2
 William J. Brown, Atty. Gen. of Ohio, James C. Cissell, U. S. Atty., Richard Ross, Columbus, Ohio, Gwenda D. Jones, Baltimore, Md., for defendants-appellees.
 
 
 3
 Before ENGEL and MERRITT, Circuit Judges, and GUY, District Judge.*
 
 
 4
 GUY, District Judge.
 
 
 5
 Appellants, Paul and Joyce Sturgell, appeal from the district court's judgment holding that reduction of the family's AFDC grant due to Paul Sturgell's receipt of a veteran's non-service connected pension is consistent with federal law and regulations, and does not violate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments. Finding that neither applicable statutes and regulations nor the Constitution prohibit this reduction of benefits, we affirm.
 
 
 6
 The facts presented to the court below are not in dispute. Appellant Paul Sturgell served in the military for seven years. He was found to be totally and permanently disabled for reasons unrelated to his military service by the Ohio Department of Public Welfare in 1970, the Social Security Administration in 1974, and the Veteran's Administration (VA) in 1977. Because he was without funds and disabled, he applied for Supplemental Security Income benefits (SSI) under 42 U.S.C. § 1381 et seq. In 1977, he received a full SSI grant of $177.80 per month. At the same time, Sturgell's wife, Joyce, and their two children received the full monthly grant of $215.00 for a family of three under the Aid for Families with Dependent Children program (AFDC), 42 U.S.C. § 601 et seq. and O.R.C. § 5101. Consequently, their total monthly income in 1977 was $392.80. In computing the family's income for purposes of determining the amount of AFDC benefits, Paul Sturgell was not considered to be a member of the family and his SSI benefits were not counted as income or resources available to the AFDC unit.[1] As a result, the family's AFDC grant was greater than if the SSI benefits Paul Sturgell received had been considered as income to the family and they had been counted as a family of four rather than a family of three.
 
 
 7
 In late 1976, the Franklin County Welfare Department notified Paul Sturgell that federal and state law required him to apply for VA benefits.[2] On December 31, 1976, Paul Sturgell was awarded a non-service connected disability pension under 38 U.S.C. § 351 in the amount of $209.00 per month. After the change in source of income was reported to the Social Security Administration and the Welfare Department, the Welfare Department notified the Sturgells that Paul Sturgell's SSI benefits were terminated and that his VA pension would be included in determining the family's income for purposes of awarding AFDC benefits.[3] As a result, the amount of the AFDC grant was reduced to $58.00, so that the total combined income of the Sturgell family became $267.00 per month, the amount to which a family of four was entitled under the AFDC program at that time.
 
 
 8
 On January 3, 1978, after the Sturgells had filed an action in federal district court complaining of the reduction in benefits, Judge Robert M. Duncan issued an order enjoining the state defendants and their agents from reducing Joyce Sturgell's monthly AFDC grant by more than $25.00, pending decision of the legal issues involved in reducing the benefits. The order also enjoined the federal defendants from refusing federal monies to the state defendants for actions taken as a result of the court's order. On August 4, 1978, after the case had been presented to the court on cross motions for summary judgment, the court ruled that inclusion of the amount of Paul Sturgell's VA pension in the family's income for purposes of fixing the amount of their AFDC benefits was proper as a matter of statutory construction and could not be assailed on equal protection grounds.
 
 
 9
 After notice of appeal was filed with this court on August 10, 1978, appellants filed a motion to remand the case to the district court for vacation of the lower court's decision or a declaration that the case is moot based on the Veterans and Survivors Pension Improvement Act of 1978, Pub.L. 95-588, which raised the rates for VA pensions paid for non-service related disabilities. This court denied the motion on January 12, 1979.
 
 I.
 STATUTORY AND REGULATORY PROVISIONS
 
 10
 Before considering the arguments appellants make in support of their contentions, it is necessary to review the relevant applicable statutory and regulatory provisions.
 
 
 11
 The AFDC program, 42 U.S.C. § 601 et seq., provides categorical federal grants to states for aid and services for needy families with children. In order to be eligible for federal funding, a state must submit a plan to the Secretary of Health and Human Services that defines, inter alia, eligibility criteria for recipients. If the plan meets the requirements set forth in 42 U.S.C. § 602(a) and the implementing regulations found at 45 C.F.R. § 233.10 et seq., the Secretary must approve the plan. Since eligibility for benefits is based on financial need, 42 U.S.C. § 602(a)(7) provides:
 
 
 12
 (a) A State plan for aid and services to needy families with children must ... (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income;
 
 
 13
 45 C.F.R. § 233.20(a)(1)(i) further requires that the state plan must:
 
 
 14
 Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way except where otherwise specifically authorized by Federal statute.
 
 
 15
 It is presumed that income of a natural parent living with his family is available to them by virtue of 45 C.F.R. § 233.90(a) which provides in part:
 
 
 16
 In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph (natural or adoptive parent) will be considered available for children in the household in the absence of proof of actual contributions;
 
 
 17
 An exception to the general rule that all income attributable to the natural parent who lives in the home is available to the family and should be considered available is found in 42 U.S.C. § 602(a)(24) and complementing regulations at 45 C.F.R. §§ 233.20(a)(1)(ii) and 233.20(a)(3)(vi), (b) which provide that an individual who receives SSI benefits will not be considered a member of the family unit and such benefits will not be considered available to the family for purposes of determining the amount of its AFDC grant.
 
 
 18
 Against this statutory and regulatory background then, the four arguments raised by the appellants must be considered.
 
 
 19
 First, appellants argue that the State's inclusion of $197.00 of Paul Sturgell's $222.00 VA pension in the computation of his family's income violates 45 C.F.R. § 233.20(a)(1)(i) because 38 U.S.C. § 521 which creates his pension is a federal statute that "specifically authorizes" exclusion of that amount.
 
 
 20
 Amendments to 38 U.S.C. § 521 indicate that the monthly rate of a non-service connected VA pension shall be $197.00 if the recipient has no dependents, $212.00 if he has one, $217.00 if there are two, and $222.00 where three persons are dependent on the veteran. Appellants contend that these figures indicate that $197.00 is "earmarked" for the veteran alone, $15.00 is "earmarked" for his wife, and $5.00 is "earmarked" for each of his children. This "earmarking," they argue, is tantamount to a specific authorization by Congress that the amount allowed for the veteran is to be excluded in computing the amount of income available to the family.
 
 
 21
 The court finds, however, that 38 U.S.C. § 521 does not "earmark" or apportion the VA pension for the exclusive use of individual family members so as to compel the conclusion that less than the entire amount of the pension is not available to the family unit. Unlike 38 U.S.C. § 3107, which specifically authorizes apportionment of a VA pension if the veteran is hospitalized, institutionalized, or under domiciliary care of the United States if he is not living with his wife or if his children are not in his custody, the tables upon which appellants rely do not apportion the pension but simply increase the amount available to the family as a whole dependent on the number of family members. This is in sharp contrast to a specific authorization for exclusion such as is found in 42 U.S.C. § 602(a)(24).
 
 
 22
 Similarly, the court finds that the cases relied upon by the appellants in support of their position that the amount of the VA pension "earmarked" for him is not "available" to his wife and children so that it can be considered to come within the meaning of 42 U.S.C. § 602(a)(7) and 45 C.F.R. § 233.20(a) (1) are inapposite. In Elam v. Hanson, 384 F.Supp. 549 (N.D.Ohio 1974), and Brown v. Bates, 363 F.Supp. 897 (N.D.Ohio 1973), Judge Young found that OASDI student benefits and work study benefits should not be considered as income available to the family for purposes of computing the amount of family income for determining the need for and amount of AFDC assistance. The court reasoned in Elam v. Hanson, supra, at 553, that "assistance for the one need, maintaining the family unit where one parent is unmarried, should not be reduced because a separate need of that parent for education is also present at the same time." In the case before the court, however, the VA pension is not supplied to fulfill a separate and additional need such as education which is contingent on continuation of the status as a full-time student. Here, the pension is provided for one need: the support of the veteran and his family, and is not conditioned on continuation of a particular status.
 
 
 23
 Similarly inapplicable are the rulings in Howard v. Madigan, 363 F.Supp. 351 (D.S.D.1973), and Collins v. White, No. C 69-830 (N.D.Ohio Jan. 22, 1971), where the courts held that OASDI or VA benefits received by a child due to his father's eligibility are not available to a family unit which includes children who are not beneficiaries of the benefits because they have a different father. Exclusion of those benefits from the family's available income does not compel the same result in this case because a natural parent living at home does have an obligation to support his natural children, whereas a minor child has no obligation to support his brothers or sisters. Furthermore, while the statutes considered in Howard and Collins specifically restrict the use of the child's funds to the intended beneficiary, there is no specific restriction on the natural father's VA pension in this case.
 
 
 24
 Appellants' second statutory argument is that 42 U.S.C. § 602(a)(7) requires that only income and resources of those who are "claiming aid to families with dependent children" can be considered in determining need under the AFDC program. Since Paul Sturgell is not "claiming aid," they argue, his income cannot be considered in determining need. The court, however, finds that this argument must fail for two reasons. Even if it is conceded that Paul Sturgell is not claiming AFDC (which is not conceded in this case), his children are claiming such aid. § 233.90(a)(1) provides that income of a natural parent is considered available for children in the household and, consequently, their father's VA benefits are "resources of any child ... claiming aid" which can be considered for purposes of determining the level of benefits to be awarded. Furthermore, 42 U.S.C. § 602(a)(7) also provides that, in determining need, the state shall take into consideration "any other income and resources ... of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid." Even if Paul Sturgell is not claiming aid himself, the State can and has determined that his income should be included in determining the amount of benefits to which his family is entitled.
 
 
 25
 Appellants' third statutory argument is based on 38 U.S.C. § 3101 which prohibits the assignment of veterans' benefits; exempts them from claims of creditors; and precludes attachment, levy, or seizure by or under any legal or equitable process.[4] It is contended that the state and federal regulations that allow the portion of the veteran's pension that is "earmarked" for his use to be attributed to his family as income violate this prohibition on assignment of benefits.
 
 
 26
 Appellants rely on the recent case of Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), which involved a similar non-assignability provision found in the Railroad Retirement Act of 1974, 45 U.S.C. § 231 et seq. In Hisquierdo, the employee's divorced wife claimed entitlement to a portion of her ex-husband's retirement benefits on the basis of the California community property law. Under the Act, the spouse's entitlement to the benefits terminated upon absolute divorce, 45 U.S.C. § 231d(c)(3), and the Court found that allowing the ex-wife's claim would violate the anti-assignment provision, 45 U.S.C. § 231m. This court must reject the appellants' argument that Hisquierdo provides authority for the proposition that § 3101 is violated when Paul Sturgell's VA pension is counted toward his wife's and children's needs for several reasons.
 
 
 27
 First, it cannot be said that Paul Sturgell's $222.00 pension or any portion of it was "designed for him alone" as was found to be true of the Railroad Retirement benefits in Hisquierdo at 583, 99 S.Ct. at 809. Second, unlike Hisquierdo, there is no attempt to actually deprive Paul Sturgell of the use of a portion of the VA benefits authorized but, rather, the scheme acknowledges that realistically the benefits exist for the support of the entire family. Third, in Hisquierdo, the court discusses § 459 of the 1977 amendments to the Social Security Act, 42 U.S.C. § 659, which provide that moneys due from or payable by the United States are subject to legal process to enforce legal obligations to pay alimony or child support. That section, the court notes, authorizes assignment of benefits which would otherwise be non-assignable under provisions such as 45 U.S.C. § 231m (or 38 U.S.C. § 3101(a)). In discussing § 459, the court recognizes a distinction relative to the treatment of existing family obligations, which tends to support rather than refute the propriety of finding in this case that there is no violation of the anti-assignment language of § 3101(a).
 
 
 28
 Appellants' fourth argument is that it is arbitrary, unreasonable, and inequitable to include the amount of Paul Sturgell's VA benefits in computing the family's AFDC grant while excluding SSI benefits for the same purpose. Allowing the Franklin County Welfare Department to do this, they contend, violates the sections of the regulations which require that coverage, eligibility, need, and amount of assistance be determined in a reasonable, equitable, and non-arbitrary manner.[5]
 
 
 29
 Concerns with reasonableness and arbitrariness of classification necessarily suggest analysis in terms of equal protection standards. For the reasons given in Part II of this opinion, the court finds that the scheme is reasonable and non-arbitrary in the constitutional sense. While the state administrative agency has an obligation to act fairly, this court will not second guess their determination where they have acted in a manner consistent with the specific statutory provisions as well as the constitutional requirements of equal protection.
 
 II.
 EQUAL PROTECTION
 
 30
 Appellants challenge the district court's equal protection analysis, arguing that the principles of equality found in the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment require that the same treatment be accorded to the beneficiary of a VA pension as is given the recipient of SSI benefits.
 
 
 31
 It is well established that the Fifth Amendment's Due Process Clause which applies to the federal government encompasses equal protection principles. Mathews v. DeCastro, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976); Weinberger v. Salfi, 422 U.S. 749, 768-770, 95 S.Ct. 2457, 2468-2469, 45 L.Ed.2d 522 (1975). Thus, a challenge to the federal statutory and regulatory scheme or the state's implementation of that scheme on equal protection grounds requires identical analysis. The standard for testing the validity of a classification made by Congress in the Social Security Act was stated in Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960):
 
 
 32
 Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.
 
 
 33
 In Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the Court upheld a provision of the Social Security Act which reduced the amount of social security disability benefits available by the amount of workers compensation benefits received, but did not require an offset when similar payments were made by a private disability insurer. The Court said at 84, 92 S.Ct. at 258:
 
 
 34
 We have no occasion, within our limited function under the Constitution, to consider whether the legitimate purposes of Congress might have been better served by applying the same offset to recipients of private insurance, or to judge for ourselves whether the apprehensions of Congress were justified by the facts. If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.
 
 
 35
 In analyzing state welfare legislation under the Equal Protection Clause of the Fourteenth Amendment, the Court stated in Dandridge v. Williams, 397 U.S. 471, at 485-486, 90 S.Ct. 1153, at 1161-1162, 25 L.Ed.2d 491 (1970).
 
 
 36
 In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classification made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (31 S.Ct. 337, 340, 55 L.Ed. 369). "The problems of government are practical ones and may justify, if they do not require, rough accommodations illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70 (33 S.Ct. 441, 443, 57 L.Ed.2d 730). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426 (81 S.Ct. 1101, 1105, 6 L.Ed.2d 393).
 
 
 37
 To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. See Snell v. Wyman, 281 F.Supp. 853, aff'd, 393 U.S. 323 (89 S.Ct. 553, 21 L.Ed. 511). It is a standard that has consistently been applied to state legislation restricting the availability of employment opportunities. Goesaert v. Cleary, 335 U.S. 464 (69 S.Ct. 198, 93 L.Ed. 163); Kotch v. Board of River Port Pilots Comm'rs, 330 U.S. 552 (67 S.Ct. 910, 91 L.Ed. 1093). See also Flemming v. Nestor, 363 U.S. 603 (80 S.Ct. 1367, 4 L.Ed.2d 1435). And it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.
 
 
 38
 (Footnotes omitted.)
 
 
 39
 In analyzing appellants' equal protection arguments, this court is further aided by the Supreme Court's decision in Califano v. Jobst, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), which involved an equal protection challenge to the Social Security Act's child benefit provisions. The relevant sections of the Act provided that a person who became totally disabled before the age of 18 was entitled to receive benefits if his or her parent was a contributor to the social security fund. The Act further provided that any such benefits terminated upon marriage. In 1958, the Act was amended to provide that marriage would not terminate the disability benefits if the qualifying child married a person who was also entitled to child disability benefits. Any other marriage, however, would cause termination of the benefits, even if the beneficiary married another disabled person who was not able to provide support. The district court found that Congress' failure to create an exception for a larger class of marriages (those marriages where the spouse was disabled and unable to provide support rather than those who were entitled to child disability benefits) violated the equality principles of the Fifth Amendment's Due Process Clause.
 
 
 40
 The Supreme Court reversed, finding first that there was a rational basis for the general rule allowing termination of benefits upon marriage because the beneficiary is less likely to be dependent upon his parents for support. The Court then went on to find that the exception in cases of marriage to another disabled person receiving benefits was not impermissibly underinclusive as the district court had found but rather that Congress had acted rationally and therefore the exception was valid. The Court stated at 56-58, 98 S.Ct. at 100-101:
 
 
 41
 (E)ven if the benign purpose of the 1958 amendment encompasses this case, legitimate reasons justify the limits that Congress placed on it. See Richardson v. Belcher, 404 U.S. 78 (92 S.Ct. 254, 30 L.Ed.2d 231). The exception, like the general rule itself, is simple to administer. It requires no individualized inquiry into degrees of hardship or need. It avoids any necessity for periodic review of the beneficiaries' continued entitlement. In the cases to which the exception does apply, it is a reliable indicator of probable hardship. Since the test is one that may be applied without introducing any new concepts into the administration of the trust fund, Congress could reasonably take one firm step toward the goal of eliminating the hardship caused by the general marriage rule without accomplishing its entire objective in the same piece of legislation. Williamson v. Lee Optical Co., 348 U.S. 483, 489 (75 S.Ct. 461, 465, 99 L.Ed. 563). Even if it might have been wiser to take a larger step, the step Congress did take was in the right direction and had no adverse impact on persons like the Jobsts.
 
 
 42
 (Footnotes omitted.)
 
 
 43
 As in Califano v. Jobst, the appellants here do not challenge the general rule that income available to the Sturgell family should be included in determining the amount of AFDC benefits to be awarded to the family unit. Congress recognized that where resources are actually available to the family unit the family is less needy. Allocating scarce resources to families with the greatest need clearly bears a rational relationship to the purposes of the AFDC program. 42 U.S.C. § 601.
 
 
 44
 Similarly, appellants do not contend that Congress acted impermissibly in enacting § 602(a)(24) to benefit families in which a parent receives SSI benefits. That section provides an incentive for an AFDC father to remain at home, and is rationally related to the Act's purpose of "maintaining and strengthening family life," 42 U.S.C. § 601, a legitimate goal of the AFDC program.
 
 
 45
 The appellants do assert, however, as did the plaintiffs in Califano v. Jobst, that the rationale behind the exception as it relates to SSI recipients applies with equal force to VA pension recipients and that the exception is therefore unconstitutionally underinclusive in failing to accord similar treatment to families in which the father receives a non-service connected VA pension.
 
 
 46
 The court must first determine the proper constitutional standard against which the classification involved in this case is to be judged. Appellants argue that a standard of review more exacting than the rational basis test is appropriate because Paul Sturgell is treated differently than an SSI recipient solely because he is a veteran, a status over which he has no control. He also contends that the rational basis test is not appropriate because fundamental family interests are at stake in that reduction of AFDC benefits may cause him to leave his family.[6]
 
 
 47
 The court finds that Paul Sturgell's status as a veteran does not require the statutory scheme to be tested against a standard stricter than the rational basis test. Veterans are not a class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Even if the statute could be said to impose a penalty upon veterans as a class, the distinction is not sufficiently akin to those classifications which have been found to require strict judicial scrutiny. E. g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race); Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (ancestry). Neither are veterans a class of persons subject to "archaic and broad overgeneralizations," so as to require a standard of review like that applied to gender-based classifications. Weinberger v. Wiesenfeld, 420 U.S. 636, 195 S.Ct. 1225, 43 L.Ed.2d 514 (1975).
 
 
 48
 The court also finds that appellants' assertions that the classification impacts on the "fundamental right to family integrity" in providing a disincentive for Paul Sturgell to remain with his family does not require a higher level of scrutiny. In order for strict scrutiny to be required because a fundamental interest is involved, the right asserted must be one that is explicitly or implicitly guaranteed by the constitution. San Antonio School District v. Rodriguez, supra, 411 U.S. at 33-34, 93 S.Ct. 1296-1297. The Supreme Court has found that the following rights are fundamental: the right to vote, Bullock v. Carter, 405 U.S. 134, 95 S.Ct. 849, 31 L.Ed.2d 92 (1972); the right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); the rights guaranteed by the First Amendment, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); and certain rights which are uniquely private in nature, see Carey v. Population Service International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).
 
 
 49
 The Court described the privacy rights protected in Carey v. Population Services International, at 684-685, 97 S.Ct. at 2015-16:
 
 
 50
 While the outer limits of (the right of personal privacy) have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions "relating to marriage, Loving v. Virginia, 388 U.S. 1, 12 (87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010) (1967); procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541-542 (62 S.Ct. 1110, 1113-1114, 86 L.Ed. 1655) (1942); contraception, Eisenstadt v. Baird, 405 U.S. (438) at 453-454 (92 S.Ct. 1029 at 1038-1039, 31 L.Ed.2d 349); id. at 460, 463-465 (92 S.Ct. at 1042, 1043-1044) (White, J., concurring in result); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166 (64 S.Ct. 438, 442, 88 L.Ed. 645) (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 535 (45 S.Ct. 571, 573, 69 L.Ed. 1070) (1925); Meyer v. Nebraska, (262 U.S. 390, 399 (43 S.Ct. 625, 626, 67 L.Ed. 1042) (1923))." Roe v. Wade, supra, (410 U.S. 113) at 152-153 (93 S.Ct. 705, at 726, 35 L.Ed.2d 147 (1973)). See also Cleveland Board of Education v. LaFleur, 414 U.S. 632, 639-640 (94 S.Ct. 791, 796-797, 39 L.Ed.2d 52) (1974).
 
 
 51
 The right of a family to live together as a unit would appear to be among these protected privacy rights. See also, Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).
 
 
 52
 However, in order for a statute which creates a classification that touches the exercise of a fundamental right to be subject to strict judicial scrutiny, the classification must significantly interfere with the exercise of that right. The Supreme Court recently elaborated on this requirement in the context of interference with the right to marry. In Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), the Court invalidated a Wisconsin statute providing that any resident "having minor issues not in his custody and which he is under obligation to support by any court order or judgment" may not marry without a court order. To obtain the court order it had to be shown that the support obligation has been met and the children are not likely to become public charges. The Court stated at 387, 98 S.Ct. at 681:
 
 
 53
 Under the challenged statute, no Wisconsin resident in the affected class may marry in Wisconsin or elsewhere without a court order, and marriages contracted in violation of the statute are both void and punishable as criminal offenses. Some of those in the affected class, like appellee, will never be able to obtain the necessary court order, because they either lack the financial means to meet their support obligations or cannot prove that their children will not become public charges. These persons are absolutely prevented from getting married. Many others, able in theory to satisfy the statute's requirements, will be sufficiently burdened by having to do so that they will in effect be coerced into forgoing their right to marry. And even those who can be persuaded to meet the statute's requirements suffer a serious intrusion into their freedom of choice in an area in which we have held such freedom to be fundamental.
 
 
 54
 (Footnote omitted.)
 
 
 55
 The Court distinguished the situation in Califano v. Jobst, supra, in footnote 12, at 387, 98 S.Ct. at 681:
 
 
 56
 The directness and substantiality of the interference with the freedom to marry distinguish the instant case from Califano v. Jobst, ante, (434 U.S.) p. 47 (98 S.Ct. 95, 54 L.Ed.2d 228). In Jobst, we upheld sections of the Social Security Act providing, inter alia, for termination of a dependent child's benefits upon marriage to an individual not entitled to benefits under the Act. As the opinion for the Court expressly noted, the rule terminating benefits upon marriage was not "an attempt to interfere with the individual's freedom to make a decision as important as marriage." Ante, (434 U.S.) at 54 (98 S.Ct. at 99). The Social Security provisions placed no direct legal obstacle in the path of persons desiring to get married, and notwithstanding our Brother REHNQUIST'S imaginative recasting of the case, see dissenting opinion, post, (434 U.S.) at 408 (98 S.Ct. at 692) there was no evidence that the laws significantly discouraged, let alone made "practically impossible," any marriages.
 
 
 57
 While appellants argue that the existing AFDC program provides a disincentive for Paul Sturgell to remain at home with his family, this is not the type of direct and substantial interference with a family relationship which would trigger close judicial scrutiny. See also, Califano v. Aznavorian, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The Supreme Court has repeatedly applied the simple rational basis test in reviewing the complex social welfare system which "necessarily deals with the intimacies of family life," Califano v. Jobst, supra, 434 U.S. at 54, n. 11, 98 S.Ct. at 100, and this court finds that the district court properly chose to apply that standard to this case.
 
 
 58
 The question thus becomes whether there are rational reasons for providing an exception for recipients of SSI benefits while not according the same treatment to recipients of non-service related VA pensions. Unlike the classification attacked in Califano v. Jobst, supra, there is no administrative difficulty in identifying veterans who receive non-service related pensions. Nevertheless, the court concludes that rational reasons for the limited exception do exist.
 
 
 59
 It is important to note that because appellant Paul Sturgell qualified for a VA pension he has raised the issue here in the context of the receipt of such a pension. However, the results would have been the same regardless of the source of Sturgell's other income. Appellants attempt to distinguish VA pension recipients from other pension or benefit recipients and argue that the recipients of non-service connected veterans pensions are unlike recipients of other public disability plans such as social security disability benefits, black lung benefits, workers compensation benefits, and the multitude of private disability plans because eligibility for the pension is based solely on need, as is SSI. In that regard, they argue, the VA pension is a "program of last resort," just like SSI. They further contend that only SSI and the non-service connected veterans pension impose resource limitations and award benefits at a level substantially lower than the other disability programs.
 
 
 60
 While it is true that a particular classification cannot be rationalized by assigning different labels to what are really like classes, neither can two classes be made indistinguishable by attaching a common label. Richardson v. Belcher, supra, at 83-84, 92 S.Ct. at 258. Consequently, the court must look beyond appellants' label of both non-service connected veterans pensions and SSI benefits as "programs of last resort."
 
 
 61
 All of the public and private disability programs are intended to provide financial assistance for the beneficiary and his or her family. As explained in Part I of this opinion, the SSI program requires that a person eligible for any other benefits must apply for them and, if found to be entitled to receive such benefits, SSI benefits will be reduced or in most cases eliminated. As a necessary consequence of this, an eligible family's AFDC unit would include the beneficiary of any such disability benefits and the AFDC allowance would be adjusted accordingly. Thus, a person may be without funds, but if he or she is eligible for any other benefit program, the receipt of those benefits, like the receipt of a non-service connected veterans pension, will reduce the amount of AFDC his or her family is entitled to. Further, in order to be even eligible for AFDC consideration, whatever other income a family had would of necessity be income "of last resort." Thus, the attempt to distinguish VA benefits from other benefits received is for the most part a distinction without a difference. Congress has made a clear decision to include these benefits in calculating income. In a system as complicated as the welfare system, it is not irrational for Congress to decide that some benefits such as SSI benefits should not be included in income calculations, even though veterans pensions, also based on need, are included.
 
 
 62
 As the district court observed, both AFDC and SSI are part of the Nation's welfare system under the Social Security Act and both are intended as income maintenance programs. The benefits are derived from the same trust fund and are administered by the same agency. No state need apply to the federal government for assistance with its own state welfare program but, if it does apply, it must meet the criteria set forth in the federal regulations (footnote 1, supra). By providing that a state may not count the federal "welfare" payment being received by an individual or family that applies for federally supported AFDC benefits, Congress has done no more than ensure that states fulfill their responsibilities to their needy citizens without taking undue financial advantage of the federal "welfare" assistance available to certain individuals under certain circumstances. The fact that Congress has not required all other income sources to be ignored by the states in computing welfare benefits is not tantamount to an improper classification scheme, however. Veterans pensions, for example, are not part of this primary welfare system and are derived from a separate fund and are administered by a separate agency as well. The court finds that these differences in treatment that are mandatory for participating states are thus premised upon rational policy considerations that comport with applicable due process requirements.
 
 
 63
 It should also be noted that Congress was fully cognizant of the manner in which veterans pensions were being considered in the context of federal assistance to state welfare funding. The House Report on Pub.L. 92-603, which added § 602(a)(24) to the requirements for plans of states seeking to qualify for AFDC funding, discusses what types of payments to the proposed beneficiaries should be included in determining the AFDC award:
 
 
 64
 Fifth, your committee's bill would provide that other assistance (not including veterans' pensions) provided on a basis of need by a public or private agency (a private agency or organization being described as one that is exempt from taxation under Section 501(c)(3) or (4) of the Internal Revenue Code) would have no effect on the amount of the family assistance payment. Your committee believes that this policy is necessary in order to permit efforts on behalf of the poor by private organizations and by State and local governments, including Indian tribes. Supplemental payments made by a State or local government could not undermine the earnings disregard provisions if such payments are to be disregarded under this provision.
 
 
 65
 Counting veterans payments against the benefits continues a longstanding practice in welfare, and thus does not interfere with the veteran program's benefit structure.
 
 
 66
 H.R.Rep.No.92-231, 92nd Cong., 2nd Sess. 177, reprinted in (1972) U.S.Code Cong. & Ad.News, 4989, 5163.
 
 
 67
 Thus, it is clear that Congress did consider the seeming inequity that appellants attack in this case. This court, therefore, is unable to find that the appellees' construction of the statutory scheme is contrary to the legislative intent underlying § 602(a)(24).
 
 
 68
 As the Court stated in Dandridge v. Williams, supra, 397 U.S. at 486, 90 S.Ct. 1162, "the Equal Protection Clause does not require that the state must choose between attacking every aspect of a problem or not attacking the problem at all." The language used by the Court at 487, 90 S.Ct. at 1162 in upholding the state's scheme under the Fourteenth Amendment is equally applicable to Congress' actions in devising the present system:
 
 
 69
 We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, ante, (397 U.S. 254) p. 254 (90 S.Ct. 1011, 25 L.Ed.2d 287). But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. Cf. Steward Mach. Co. v. Davis, 301 U.S. 548, 584-585 (57 S.Ct. 883, 889-890, 81 L.Ed. 1279); Helvering v. Davis, 301 U.S. 619, 644 (57 S.Ct. 904, 909, 81 L.Ed. 1307).
 
 
 70
 Accordingly, the District Court's decision is affirmed.
 
 
 
 *
 Honorable Ralph B. Guy, Jr., United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation
 
 
 [1]
 Section 402(a)(24) of Title IV, 42 U.S.C. § 602(a)(24) provides in part:
 (a) A State plan for aid and service to needy families with children must (provide that)
 (24) if an individual is receiving benefits under subchapter XVI of this chapter, then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter.
 
 
 [45]
 C.F.R. § 233.20(a) also specifies requirements for a state plan. § 233.20(a)(1)(ii) requires that the plan must
 Provide that individuals receiving SSI benefits under title XVI, for the period for which such benefits are received, shall not be included in the AFDC assistance unit for purposes of determining need and the amount of the assistance payment. Under this requirement, "individuals receiving SSI benefits under title XVI" includes individuals receiving mandatory or optional State supplementary payments under section 1616(a) of the Act or under section 212 of Pub.L. 93-66.
 § 233.20(a)(3)(vi)(b) similarly provides:
 In family groups living together, income of the spouse is considered available for his spouse and income of a parent is considered available for children under 21, except that, under the AFDC plan, if a spouse or parent is receiving SSI benefits under title XVI, then, for the period for which such benefits are received, his income and resources shall not be counted as income and resources available to the AFDC unit. For purposes of this exception, "a spouse or parent receiving SSI benefits" includes a spouse or parent receiving mandatory or optional State supplementary payments under section 1616(a) of the Act or under section 212 of Pub.L. 93-66.
 See also, Ohio Public Assistance Manual (OPAM) §§ 410.2, 410.46, and 421.81.
 
 
 [2]
 42 U.S.C. § 1382a(a)(2)(B) defines unearned income under the SSI Act to include:
 any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement, annuities and pensions, and unemployment insurance benefits;
 42 U.S.C. § 1382(e)(2) provides:
 No person shall be an eligible individual or eligible spouse for purposes of this subchapter if, after notice to such person by the Secretary that it is likely that such person is eligible for any payments of the type enumerated in section 1382a(a)(2)(B) of this title, such person fails within 30 days to take all appropriate steps to apply for and (if eligible) obtain any such payments.
 See also, OPAM § 420.23 which provides that "(i)neligibility for aid results if an applicant or recipient refuses to accept unconditionally available income." (Emphasis in original.)
 Thus, Paul Sturgell was never legally entitled to receive SSI benefits in the first instance, since he was at all relevant times eligible for non-service connected VA benefits.
 
 
 [3]
 OPAM § 412.2 provides in part that "(o)ne ADC case shall be established for the family. The assistance group shall include any eligible children, and if not a recipient of SSI, the natural or adoptive parent(s)." (Emphasis in original.)
 OPAM § 422.1 provides in part that "(t)he gross amount of OASDI, Railroad Retirement benefits, Veterans Benefits or other sources of public or quasi-public pensions is considered net income and the full amount received would be deducted as income from the need allowance for the assistance group."
 
 
 [4]
 38 U.S.C. § 3101(a) provides in pertinent part:
 Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.
 
 
 [5]
 In support of this argument, appellants cite §§ 233.10(a)(1) and 233.10(a) (1)(iv) which deal with coverage and eligibility requirements of a state plan in general. They also cite §§ 233.20(a)(1)(i) and 233.20(a)(3)(ii)(E) which discuss requirements of a state plan concerning need and amount of assistance available
 
 
 [6]
 If he is not living at home, Paul Sturgell would not be counted as part of the family unit and his VA pensions would not be considered in determining the family's need and AFDC allowance