CALIFANO, SECRETARY OF HEALTH, EDUCATION, AND WELFARE *v.* JOBST

No. 76–860.   Argued October 4, 1977—Decided November 8, 1977

*Stephen L. Urbanczyk* argued the cause *pro hac vice* for appellant.   With him on the brief were *Solicitor General McCree, Assistant Attorney General Babcock,* and *William Kanter.*

*J. D. Riffel* argued the cause and filed a brief for appellee.

MR. JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether Congress has the power to require that a dependent child's social security benefits terminate upon marriage even though his spouse is permanently disabled. Answering that question in the negative, the District Court held that 42 U. S. C. §§ 402 (d)(1)(D) and 402 (d)(5) deprive appellee of property without due process of law. *Jobst* v. *Richardson,* 368 F. Supp. 909. We reverse.

Mr. Jobst has been disabled by cerebral palsy since his birth in 1932. He qualified for child's insurance benefits in 1957, several months after his father died. In 1970 he married another cerebral palsy victim. Since his wife was not entitled to benefits under the federal Act,[1] the statute required the Secretary to terminate his benefits.[2]

---

[1] Mrs. Jobst was receiving welfare assistance from the Division of Welfare of the State of Missouri, but was not receiving any social security benefits under 42 U. S. C. §§ 401–432 (1970 ed. and Supp. V).

[2] Section 202 of the Social Security Act, 49 Stat. 623, as amended, 42 U. S. C. § 402 (1970 ed. and Supp. V), provides in pertinent part:

"(d)(1) Every child (as defined in section 416 (e) of this title) of an individual entitled to old-age or disability insurance benefits or of an individual who dies a fully or currently insured individual, if such child—

"(A) has filed application for child's insurance benefits,

"(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423 (d) of this title) which began before he attained the age of 22, and

"(C) was dependent upon such individual—

.        .        .        .        .

"shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs—

"(D) the month in which such child dies or marries,

.        .        .        .        .

"(5) In the case of a child who has attained the age of eighteen and who marries—

Mr. Jobst brought this suit to review the Secretary's action.[3] The District Court held that the statute violated the equality principle applicable to the Federal Government by virtue of the Fifth Amendment, *Bolling* v. *Sharpe*, 347 U. S. 497, because all child's insurance beneficiaries are not treated alike when they marry disabled persons. Beneficiaries who marry other social security beneficiaries continue to receive benefits whereas those who marry nonbeneficiaries lose their benefits permanently. The court held this distinction irrational. 368 F. Supp., at 913.

The Secretary appealed directly to this Court. 28 U. S. C. § 1252. Noting that Mr. Jobst and his wife had become entitled to benefits under a newly enacted statute authorizing supplemental security income for the aged, blind, and disabled,[4] this Court remanded the case for reconsideration in the light of that program. *Weinberger* v. *Jobst*, 419 U. S. 811.

---

"(A) an individual entitled to benefits under subsection (a), (b), (e), (f), (g), or (h) of this section or under section 423 (a) of this title, or

"(B) another individual who has attained the age of eighteen and is entitled to benefits under this subsection,

"such child's entitlement to benefits under this subsection shall, notwithstanding the provisions of paragraph (1) of this subsection but subject to subsection (s) of this section, not be terminated by reason of such marriage . . . .

.    .    .    .    .

"(s)(2) . . . [S]o much of subsectio[n] . . . (d)(5) . . . of this section as precedes the semicolon, shall not apply in the case of any child unless such child, at the time of the marriage referred to therein, was under a disability . . . ."

[3] Mr. Jobst first exhausted his administrative remedies. A hearing examiner found in his favor, ruling that the denial of benefits was unconstitutional. The Appeals Council reversed; it held that an administrative agency has no power to rule on the constitutionality of the Act it administers.

[4] See Title XVI of the Social Security Act, as amended by the Social Security Amendments of 1972, 86 Stat. 1465, 42 U. S. C. § 1381 *et seq.* (1970 ed., Supp. V).

The District Court reviewed the new program, concluded that it had no relevance to the issues presented by this case, and reinstated its original judgment. The Secretary again appealed, and we noted probable jurisdiction. 429 U. S. 1089.

Although the District Court focused on the statutory consequences of a marriage between two disabled persons, the Secretary argues that the relevant statutory classification is much broader. We therefore first describe the statutory scheme, then consider the validity of a general requirement that benefits payable to a wage earner's dependent terminate upon marriage, and finally decide whether such a general requirement is invalidated by an exception limited to marriages between persons who are both receiving benefits.

I

As originally enacted in 1935, the Social Security Act authorized a monthly benefit for qualified wage earners at least 65 years old and a death benefit payable to the estate of a wage earner who died at an earlier age. 49 Stat. 622–624. In 1939 Congress created secondary benefits for wives, children, widows, and parents of wage earners. See 53 Stat. 1362, 1364–1366. The benefits were intended to provide persons dependent on the wage earner with protection against the economic hardship occasioned by loss of the wage earner's support. *Mathews* v. *De Castro,* 429 U. S. 181, 185–186. Generally speaking, therefore, the categories of secondary beneficiaries were defined to include persons who were presumed to be dependent on the wage earner at the time of his death, disability, or retirement.

Specifically, the child's benefit as authorized in 1939 was available only to a child who was unmarried, under 18, and dependent upon the wage earner at the time of his death or retirement. 53 Stat. 1364. Since Mr. Jobst was 23 at the time of his father's death, he would not have been eligible for a child's benefit under the 1939 Act. Under that statute,

the child's benefit, like the benefits for widows and parents, terminated upon marriage. 53 Stat. 1364–1366.

In 1956, Congress enlarged the class of persons entitled to a child's benefit to include those who, like Mr. Jobst, were under a disability which began before age 18.[5] For such a person the benefit continued beyond the age of 18 but, as with other secondary benefits, it terminated upon marriage.

In 1958, Congress adopted the amendment that created the basis for Mr. Jobst's constitutional attack. The amendment provided that marriage would not terminate a child's disability benefit if the child married a person who was also entitled to benefits under the Act. See 72 Stat. 1030–1031. A similar dispensation was granted to widows, widowers, divorced wives, and parents.[6] In each case the secondary benefit survives a marriage to another beneficiary, but any other marriage—even to a disabled person unable to provide the beneficiary with support—is a terminating event unaffected by the 1958 amendment.

---

[5] The 1956 amendment replaced the requirement that the child be under 18 at the time of application with a requirement that he be either under 18 or "under a disability . . . which began before he attained the age of eighteen . . . ." 70 Stat. 807. In 1972, Congress raised the age before which the child's disability must begin from 18 to 22. 86 Stat. 1343–1345.

[6] 72 Stat. 1030–1032. The House Report explained the purpose of this change:

"When a secondary beneficiary marries, such person's benefit is terminated under present law. If he marries a person who is or who will become entitled to an old-age insurance benefit, he may qualify for a new benefit based on the earnings of the new spouse. But if the new spouse is also receiving a secondary benefit, the benefits of both are terminated and ordinarily neither beneficiary can become entitled to any new benefits. Your committee's bill would eliminate the hardship in these cases by providing that marriage would not terminate a benefit where a person receiving mother's, widow's, widower's, parent's, or childhood disability benefits marries a person receiving any of these benefits or where a person receiving mother's or childhood disability benefits marries a person entitled to old-age insurance benefits." H. R. Rep. No. 2288, 85th Cong., 2d Sess., 18 (1958).

It was the failure of Congress in 1958 to create a larger class of marriages that do not terminate the child's benefit for disabled persons that the District Court found irrational.

## II

The provision challenged in this case is part of a complex statutory scheme designed to administer a trust fund financed, in large part, by taxes levied on the wage earners who are the primary beneficiaries of the fund. The entitlement of any secondary beneficiary is predicated on his or her relationship to a contributing wage earner. If the statutory requirements for eligibility are met, the amount of the benefit is unrelated to the actual need of the beneficiary. See, e. g., *Mathews* v. *De Castro, supra,* at 185–186. The statute is designed to provide the wage earner and the dependent members of his family with protection against the hardship occasioned by his loss of earnings; it is not simply a welfare program generally benefiting needy persons. *Califano* v. *Goldfarb,* 430 U. S. 199, 213–214 (opinion of BRENNAN, J.).

Nor has Congress made actual dependency on the wage earner either a sufficient or a necessary condition of eligibility in every case.[7] Instead of requiring individualized proof on a case-by-case basis, Congress has elected to use simple criteria, such as age and marital status, to determine probable dependency.[8] A child who is married or over 18 and neither

---

[7] No doubt there are many distant relatives and unrelated persons who do not qualify for benefits even though they are actually dependent on a wage earner. Similarly, some married children and some 19-year-old children remain dependent on their parents because they are unable to support themselves while their younger brothers and sisters may be self-sufficient.

[8] The idea that marriage changes dependency is expressed throughout the Social Security Act. Most secondary beneficiaries are eligible only if they have not married or remarried. See 42 U. S. C. § 402 (b) (1) (C) (divorced wives); § 402 (e) (1) (A) (widows); § 402 (f) (1) (A) (widowers); § 402 (g) (1) (A) (surviving or divorced mothers); § 402 (h) (1) (C)

disabled nor a student is denied benefits because Congress has assumed that such a child is not normally dependent on his parents. There is no question about the power of Congress to legislate on the basis of such factual assumptions. General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases. *Weinberger* v. *Salfi,* 422 U. S. 749, 776.

Of course, a general rule may not define the benefited class by reference to a distinction which irrationally differentiates between identically situated persons. Differences in race, religion, or political affiliation could not rationally justify a difference in eligibility for social security benefits, for such differences are totally irrelevant to the question whether one person is economically dependent on another. But a distinction between married persons and unmarried persons is of a different character.

Both tradition and common experience support the conclusion that marriage is an event which normally marks an important change in economic status. Traditionally, the event not only creates a new family with attendant new responsibilities, but also modifies the pre-existing relationships between the bride and groom and their respective families. Frequently, of course, financial independence and marriage do not go hand in hand. Nevertheless, there can be no question about the validity of the assumption that a married person is less likely to be dependent on his parents for support than one who is unmarried.

Since it was rational for Congress to assume that marital

---

(parents). With some limited exceptions, §§ 402 (e) (4) and (f) (5), marriage or remarriage marks the end of secondary benefits. §§ 402 (b) (1) (H) (1970 ed., Supp. V), 402 (e) (1), 402 (f) (1), 402 (g) (1), and 402 (h) (1). In each case, however, Congress has excepted marriages to some social security beneficiaries. §§ 402 (b) (3), 402 (e) (3), 402 (f) (4), 402 (g) (3), and 402 (h) (4).

status is a relevant test of probable dependency, the general rule which obtained before 1958, terminating all child's benefits when the beneficiary married, satisfied the constitutional test normally applied in cases like this. See *Mathews* v. *De Castro,* 429 U. S., at 185; *Weinberger* v. *Salfi, supra,* and cases cited at 768–770. That general rule is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby.[9] For the marriage rule cannot be criticized as merely an unthinking response to stereotyped generalizations about a traditionally disadvantaged group,[10] or as an attempt to interfere with the individual's freedom to make a decision as important as marriage.[11]

The general rule, terminating upon marriage the benefits payable to a secondary beneficiary, is unquestionably valid.

### III

The question that remains is whether the 1958 amendment invalidates this general rule by carving out an exception for marriages between beneficiaries.

The exception does create a statutory classification, but it is not as narrow as that described by the District Court. The District Court identified the relevant classification as one distinguishing between (1) the marriage of a disabled bene-

---

[9] This proposition is not questioned by appellee. "As a general premise the Secretary undoubtedly correctly concludes it is reasonable to terminate social security payments to child beneficiaries in the event of marriage." Brief for Appellee 21.

[10] See *Weinberger* v. *Wiesenfeld,* 420 U. S. 636; *Jimenez* v. *Weinberger,* 417 U. S. 628; *Loving* v. *Virginia,* 388 U. S. 1.

[11] See *Whalen* v. *Roe,* 429 U. S. 589, 599–600, 603. Congress adopted this rule in the course of constructing a complex social welfare system that necessarily deals with the intimacies of family life. This is not a case in which government seeks to foist orthodoxy on the unwilling by banning, or criminally prosecuting, nonconforming marriages. See *Loving* v. *Virginia, supra.* Congress has simply recognized that marriage traditionally brings changed responsibilities.

ficiary to another disabled person who is receiving social security benefits and (2) the marriage of a disabled beneficiary to another disabled person who is not receiving benefits. It is true that persons in the former category are treated more favorably than those in the latter category. It is also true that persons in the latter category may have as great a need for benefits as those in the former category. But it is not correct to conclude, as the District Court did, that only disabled persons are affected by the exception, or that the legislative classification is wholly irrational.

Both the class of persons favored by the 1958 amendment and the class which remains subject to the burdens of the general marriage rule include persons who are not disabled.[12] The broad legislative classification must be judged by reference to characteristics typical of the affected classes rather than by focusing on selected, atypical examples. When so judged, both the exception and its limits are valid.

The 1958 amendment reflects a legislative judgment that a marriage between two persons receiving benefits will not normally provide either spouse with protection against the economic hardship that would be occasioned by the termination of benefits. The Secretary submits, and we agree, that it was reasonable for Congress to ameliorate the severity of the earlier rule by protecting both spouses from the dual hardship which it effected.[13]

---

[12] As we have seen, the burden of the general marriage rule is not limited to disabled beneficiaries; children, widowers, widows, divorced wives, and parents—all are affected by the rule. And although the District Court singled out for analysis marriages to disabled nonbeneficiaries, Congress did not; Mr. Jobst would also have lost his benefits if he had married an able-bodied woman who was not receiving social security benefits. Finally, the protection extended by the 1958 amendment encompasses many more persons than those described by the District Court. Like the marriage rule itself, the amendment affects widows, widowers, parents, and divorced wives, as well as disabled children. See n. 8, *supra*.

[13] The fact that marriage characteristically signifies the end of a child's

Mr. Jobst argues, however, that the reason for the amendment applies equally to his situation. He urges that his hardship is just as great as that which the amendment avoids when one beneficiary marries another, because his spouse is also disabled. He therefore attacks the exception as irrationally underinclusive.[14] We are persuaded, however, that, even if the benign purpose of the 1958 amendment encompasses this case,[15] legitimate reasons justify the limits that Congress placed on it. See *Richardson* v. *Belcher,* 404 U. S. 78. The exception, like the general rule itself, is simple to

dependency on parental support justifies a general rule terminating benefits when a child marries. The fact that a marriage between two spouses who are both receiving dependents' benefits does not characteristically signify a similar change in economic status justifies the exception. In other words, since the justifying characteristic of the general class does not apply to the excepted class, the exception rests on a reasonable predicate. This is true even though some members of each class may possess the characteristic more commonly found in the other class.

[14] Even if we were to sustain his attack, and even though we recognize the unusual hardship that the general rule has inflicted upon him, it would not necessarily follow that Mr. Jobst is entitled to benefits. Cf. *Stanton* v. *Stanton,* 421 U. S. 7, 17–18; *Stanton* v. *Stanton,* 429 U. S. 501. For the vice in the statute stems from the exception created by the 1958 amendment; that vice could be cured either by invalidating the entire exception or by enlarging it. Since the choice involves legislation having a nationwide impact, the equities of Mr. Jobst's case would not control. See Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065, 1136–1137 (1969). If we were to enlarge the exception, it would be necessary to fashion some new test of need, dependency, or disability. Although the District Court only granted relief for persons marrying a "totally disabled" spouse, its rationale would equally apply to any marriage of a secondary beneficiary to a needy nonbeneficiary.

[15] We note, however, that Congress could have rationally concluded that beneficiaries who marry other beneficiaries present a more compelling case for legislative relief than beneficiaries who marry needy nonbeneficiaries. Secondary beneficiaries who marry each other lose two sets of benefits and thus may suffer a greater loss than does a couple that sacrifices only one set of benefits.

administer. It requires no individualized inquiry into degrees of hardship or need.[16] It avoids any necessity for periodic review of the beneficiaries' continued entitlement. In the cases to which the exception does apply, it is a reliable indicator of probable hardship. Since the test is one that may be applied without introducing any new concepts into the administration of the trust fund,[17] Congress could reasonably take one firm step toward the goal of eliminating the hardship caused by the general marriage rule without accomplishing its entire objective in the same piece of legislation. *Williamson* v. *Lee Optical Co.*, 348 U. S. 483, 489. Even if it might have been wiser to take a larger step, the step Congress did take

---

[16] In the very Act that created the exception for marriages between beneficiaries, Congress showed its reluctance to use individualized determinations in allocating social security benefits. The 1958 amendments abolished a requirement that disabled children over 18 prove their individual dependency on the wage earner to qualify for benefits. Pub. L. 85–840 § 306, 72 Stat. 1030. Congress concluded that these beneficiaries should be "deemed dependent" because "the older child who has been totally disabled since before age 18 is also likely to be dependent on his parent." H. R. Rep. No. 2288, 85th Cong., 2d Sess., 17 (1958).

[17] A logical application of Mr. Jobst's position would permit the Secretary to end benefits only after an individual determination of disability or need. Congress, however, has sought to make social security payments independent of individual need, while establishing a separate program to serve those who are needy but ineligible for social security benefits. The Supplemental Security Income program is a federally funded welfare program administered through the Social Security Administration. Its purpose is plainly stated by H. R. Rep. No. 92–231, p. 147 (1971):

"[S]ome people who because of age, disability, or blindness are not able to support themselves through work may receive relatively small social security benefits. Contributory social insurance, therefore, must be complemented by an effective assistance program."

Mr. and Mrs. Jobst became eligible for the Supplemental Security Income program as soon as it was instituted. On remand the parties stipulated that, based on the couple's need, they were receiving monthly payments only $20 less than the amount they would have been receiving if Mr. Jobst's child's benefits had been restored.

was in the right direction and had no adverse impact on persons like the Jobsts.

It is true, as Mr. Jobst urges, that the limited exception may have an impact on a secondary beneficiary's desire to marry, and may make some suitors less welcome than others. But unless Congress should entirely repudiate marriage as a terminating event, that criticism will apply to any limited exception to the general rule. No one suggests that Congress was motivated by antagonism toward any class of marriages or marriage partners not encompassed by the exception. Congress' purpose was simply to remedy the particular injustice that occurred when two dependent individuals married and simultaneously lost their benefits.

We are satisfied that both the general rule and the 1958 exception are legitimate exercises of Congress' power to decide who will share in the benefits of the trust fund. The favored treatment of marriages between secondary beneficiaries does not violate the principle of equality embodied in the Due Process Clause of the Fifth Amendment.

The judgment is reversed.

*It is so ordered.*