**Harlan R. YATES, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. C 77–0323–L(B).**

United States District Court, W. D. Kentucky, Louisville Division.

Jan. 25, 1979.

Neil A. Banks, Louisville, Ky., for plaintiff.

Albert Jones, U. S. Atty., C. Fred Partin, Asst. U. S. Atty., Western District Ky., Louisville, Ky., for defendant.

## MEMORANDUM

BALLANTINE, District Judge.

This is an appeal from the decision of the Secretary of the Department of Health, Education and Welfare (Secretary) denying benefits. It is apparently a case of first impression.

Plaintiff and Betty Yates were married in 1947. Six children, five of whom survived, were born to plaintiff and Betty. In November, 1961, plaintiff and Betty were granted an absolute divorce by the Jefferson Circuit Court. Shortly thereafter plaintiff married Mildred Yates. In November, 1974, Mildred was granted disability benefits under the Social Security Act.

Title 42 U.S.C. Section 402(g) provides in pertinent part:

"(3) In the case of a widow or surviving divorced mother who marries—

(A) an individual entitled to benefits under subsection (a), (f), or (h) of this section, or under section 423(a) of this title,

\* \* \* \* \* \*

the entitlement of such widow or surviving divorced mother to benefits under this subsection shall, notwithstanding the provisions of paragraph (1) of this subsection . . . not be terminated by reason of such marriage . . . ."

A surviving divorced mother is defined as, " . . . a woman divorced from an individual who has died but only if (A) she is the mother of his son or daughter . . ." 42 U.S.C. Section 416(d)(3)(A).

Plaintiff argues that the exclusion of any reference to a surviving divorced father amounts to a denial of due process under the Fifth Amendment to the Constitution. He relies on *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). In *Wiesenfeld*, the wife died and the husband claimed benefits as her widower, arguing that the gender-based distinction violated the due process clause of the Fifth Amendment. A three-judge district court held that Section 402(g) unjustifiably discriminated against female wage earners by affording them less protection for their survivors than is afforded male wage earners. In affirming the district court the Supreme Court said:

"Obviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support. (Citation omitted.) But such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support.

"Section 402(g) clearly operates, as did the statutes invalidated by our judgment in *Frontiero*,[1] to deprive women of protection for their families which men receive as a result of their employment. Indeed, the classification here is in some

1. *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

ways more pernicious. First, it was open to the servicewoman under the statutes invalidated in *Frontiero* to prove that her husband was in fact dependent upon her. Here, Stephen Wiesenfeld was not given the opportunity to show, as may well have been the case, that he was dependent upon his wife for his support, or that, had his wife lived, she would have remained at work while he took over care of the child. Second, in this case social security taxes were deducted from Paula's salary during the years in which she worked. Thus, she not only failed to receive for her family the same protection which a similarly situated male worker would have received, but she also was deprived of a portion of her own earnings in order to contribute to the fund out of which benefits would be paid to others. Since the Constitution forbids the gender-based differentiation premised upon assumptions as to dependency made in the statutes before us in *Frontiero*, the Constitution also forbids the gender-based differentiation that results in the efforts of female workers required to pay social security taxes producing less protection for their families than is produced by the efforts of men." 420 U.S. at 645, 95 S.Ct. at 1231.

The Secretary argues that Congressional action in establishing criteria which included sex to determine probable dependency was tacitly approved in *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977). The Court finds that *Jobst* is inapposite. In that case plaintiff attacked the provision of the Act which provided that benefits paid to a dependent child of a deceased wage earner terminated upon the child's marriage to an individual not entitled to benefits under Section 402(d)(1). The Court said:

"Of course, a general rule may not define the benefited class by reference to a distinction which irrationally differentiates between identically situated persons. Differences in race, religion, or political affiliation could not rationally justify a difference in eligibility for Social Security benefits, for such differences are total-

ly irrelevant to the question whether one person is economically dependent on another. But a distinction between married persons and unmarried persons is of a different character.

"Both tradition and common experience support the conclusion that marriage is an event which normally marks an important change in economic status. Traditionally, the event not only creates a new family with attendant new responsibilities, but also modifies the pre-existing relationships between the bride and groom and their respective families. Frequently, of course, financial independence and marriage do not go hand in hand. Nevertheless, there can be no question about the validity of the assumption that a married person is less likely to be dependent on his parents for support than one who is unmarried.

"Since it was rational for Congress to assume that marital status is a relevant test of probable dependency, the general rule which obtained before 1958, terminating all child's benefits when the beneficiary married, satisfied the constitutional test normally applied in cases like this. (citation omitted.) That general rule is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby. (Footnote omitted.) For the marriage rule cannot be criticized as merely an unthinking response to stereotyped generalizations about a traditionally disadvantaged group, (footnote omitted) or as an attempt to interfere with the individual's freedom to make a decision as important as marriage (footnote omitted).

"The general rule, terminating upon marriage the benefits payable to a secondary beneficiary, is unquestionably valid." 434 U.S. 47, 98 S.Ct. at 99.

The Secretary's reliance on *Jobst* is misplaced.

In *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), the Court quoted from *Wisenfeld, supra,* and held

that discrimination based on gender violated due process. The Court said:

"We accept as settled the proposition argued by appellant that Congress has wide latitude to create classifications that allocate noncontractual benefits under a social welfare program. (Citations omitted.) It is generally the case, as said in *Flemming v. Nestor,* 363 U.S. [603], at 611, 80 S.Ct. [1367] at 1373, 4 L.Ed.2d 1435, that

'Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.'

(Citations omitted.)

"But this 'does not, of course, immunize [social welfare legislation] from scrutiny under the Fifth Amendment.' (Citation omitted.) The Social Security Act is permeated with provisions that draw lines in classifying those who are to receive benefits. Congressional decisions in this regard are entitled to deference as those of the institution charged under our scheme of government with the primary responsibility for making such judgments in light of competing policies and interests. But '[t]o withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives.' *Craig v. Boren,* [429] U.S. [190, 197], 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976) (footnote omitted). Such classifications, however, have frequently been revealed on analysis to rest only upon 'old notions' and 'archaic and overbroad' generalizations, . . ." 430 U.S. at 210, 97 S.Ct. at 1028.

The Court can find no rational distinction between the reasoning in *Wiesenfeld* and *Goldfarb* and the reasoning argued, however skeletally, by plaintiff here. As stated by Mr. Justice Powell in his concurring opinion in *Wiesenfeld:*

"Social Security is designed, certainly in this context, for the protection of the *family.* Although it lacks the contractual attributes of insurance or an annuity, (Citation omitted), it is a contributory system and millions of wage earners depend on it to provide basic protection for their families in the event of death or disability." (Emphasis in original.) 420 U.S. at 654, 95 S.Ct. at 1236.

The Court holds that the denial of the benefits to plaintiff violates his right to due process under the Fifth Amendment. The case will be remanded to the Secretary with directions to award benefits to the plaintiff.