**Lynda L. CAHOON, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 82–2532–C.**

United States District Court,
D. Massachusetts.

Nov. 22, 1983.

James F. Freeley, Jr., Gerald T. Anglin, Boston, Mass., for plaintiff.

Patti Saris, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Secretary of Health and Human Services reducing benefits which plaintiff otherwise would receive as the divorced wife of an individual entitled to old age or disability insurance benefits by the amount of her government pension. Plaintiff alleges this reduction of benefits is unconstitutional. The case is now before the Court on the Secretary's motion for summary judgment.

Prior to 1977, a divorced wife was eligible to receive Social Security benefits on account of her former spouse if she had attained age 62 and also had been married to her insured spouse for at least 20 years prior to the divorce. In 1977, Congress amended the statute to provide that a divorced wife could receive benefits as long as she had been married to the wage earner for 10 years or more. Pub.L. 95–216, § 337(b).

In 1977, Congress also adopted the government pension offset, 42 U.S.C. § 402(b)(4)(A), which is the focus of this dispute. That provision requires that if a wife or divorced wife receives a government pension, the amount of her monthly Social Security entitlement shall be reduced by the amount of her government pension. For example, if a divorced wife was entitled to receive a government pension of $90 a month, and also was entitled to Social Security benefits of $100 a month, the pension offset would reduce the amount of her Social Security entitlement to $10 a month. And if the divorced wife was receiving a government pension of $100 or more a month, her Social Security entitlement would be totally offset and she would receive her pension but no money from Social Security.

Congress recognized that the pension offset might adversely affect many women who were about to retire from government employment and who had expected to receive both their government pensions and their full Social Security entitlements. To lessen any hardship caused by the offset, Congress enacted an exception to the pension offset. Pub.L. 95–216, § 334(g). The pension offset exception provides that a divorced wife may receive her full Social Security entitlement (1) if she became entitled to a government pension within the five-year period beginning December 1977, and (2) if she had been married to the eligible spouse for at least 20 years prior to her divorce.

Plaintiff first applied for benefits as a divorced wife in February 1979. She had married the wage earner, Russell Cahoon, in 1934, and they were divorced twelve years later in 1946. In 1979 plaintiff's government pension was $2,000 a month. The Social Security Administration (SSA)

notified her that her divorced wife's benefit amount was entirely offset by her government pension because she was not eligible for the pension offset exception having been married for less than twenty years. The parties have pursued an expedited appeal to this Court. 20 C.F.R. § 404.923 *et seq.*

The law now provides that a divorced woman eligible for a government pension and about to retire may receive her full Social Security entitlement only if she was married to an insured wage earner for twenty years or more prior to divorce. A divorced woman not eligible for a government pension is eligible for full Social Security benefits after only ten years of marriage to an insured wage earner. Plaintiff argues that this distinction violates the Equal Protection clause of the Fifth Amendment.

■ The first step in equal protection analysis requires the Court to determine the level of scrutiny to apply to a given classification. Plaintiff would have the Court apply strict scrutiny. According to plaintiff, the exception classifies women on the basis of the length of their marriages, and "[s]ince the classification is based upon the marriage duration and a person's choice whether to secure a divorce, [the] classification infringes upon the fundamental interest of marriage." This Court can only uphold such a classification, plaintiff argues, if it finds a compelling government interest.

Plaintiff argues that the right to obtain a divorce, like the right to marry, is a "fundamental freedom," *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967), entitled to special protection against government restriction. The Supreme Court has never actually held that the right to obtain a divorce is fundamental. But even if the right is fundamental, a law must be shown to "significantly interfere" with decisions to obtain a divorce before a Court will apply strict scrutiny. *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978); *Mu-*

*rillo v. Bambrick,* 681 F.2d 898, 903 (3d Cir.1982).

For example, in *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), the Supreme Court upheld a section of the Social Security Act that classified recipients on the basis of marriage. The Act specified that benefits received by a disabled dependent child of a covered wage earner would terminate when the child married an individual not entitled to benefits, even though that individual·was unable to support the child because of his or her own disability. The Court refused to apply strict scrutiny "simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby." 434 U.S. at 54. The Court ruled that the law was not "an attempt to interfere with the individual's freedom to make a decision as important as marriage," but had only an indirect financial effect on the decision to marry. The Court upheld the statute, finding it had a rational basis.

In *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), the Court did apply strict scrutiny, but did so to a law which operated as a much more direct and substantial interference with the decision to marry. A Wisconsin statute prohibited any state resident under obligation to support a minor not in his custody from marrying without a judicial finding that he had met the support obligation in the past and was likely to meet it in the future. The Court found that the requirement "significantly interfere[d]" with the exercise of the right to marry because

> persons [who lacked the financial means to meet their support obligations] are absolutely prevented from getting married. Many others ... will be sufficiently burdened by having to do so that they will in effect be coerced into forgoing their right to marry. And even those who can be persuaded to meet the statute's requirements suffer a serious intrusion into their freedom [to marry].

434 U.S. at 387, 98 S.Ct. at 681.

The Court distinguished *Jobst*:

[T]he rule terminating benefits upon marriage [in *Jobst* ] was not "an attempt to interfere with the individual's freedom to make a decision as important as marriage." ... The Social Security provisions placed no direct legal obstacle in the path of persons desiring to get married, and ... there was no evidence that the laws significantly discouraged, let alone made "practically impossible," any marriages.

*Id.* at 387 n. 12, 98 S.Ct. at 681 n. 12.

I rule that this case comes under *Jobst* because the pension offset exception in this case does not substantially interfere with the right to terminate marriage. It is not alleged by plaintiff that the exception has "significantly discouraged" divorce, or has made divorce "practically impossible." Though the exception may make divorce somewhat financially less desirable, it does not place a direct legal obstacle in the way of those seeking to terminate their marriages. *Cf. Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Congress did not "attempt to interfere with the individual's freedom" to obtain a divorce, *Califano v. Jobst,* 434 U.S. at 54, 98 S.Ct. at 99, but sought merely to lessen any hardship the pension offset might inflict on women about to retire. Congress did not intend to discourage or penalize divorce.*

*See also Murillo v. Bambrick,* 681 F.2d 898 (3d Cir.1982); *Druker v. Comm. of Internal Revenue,* 697 F.2d 46 (2d Cir. 1982); *Sturgell v. Creasy,* 640 F.2d 843 (6th Cir.1981).

Accordingly, I rule that strict scrutiny/compelling state interest analysis should not be used in this case.

■ Once it is established that the strict scrutiny test is not applicable, a court should then evaluate the constitutionality of the challenged law under the so-called rational basis test which requires a court to uphold the validity of a statute as long as it

is not shown to be arbitrary or irrational. *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 175–176, 101 S.Ct. 453, 459–460, 66 L.Ed.2d 368 (1980); *Jefferson v. Hackney,* 406 U.S. 535, 549, 92 S.Ct. 1724, 1733, 32 L.Ed.2d 285 (1972); *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

The legislative history shows that when Congress passed the pension offset in 1977, it recognized that some women who were very close to retirement had relied on the prospect of receiving both their government pensions and social security benefits in planning for retirement, and that for them it was too late to make alternative arrangements.

The [conference committee members] are concerned that there may be large numbers of women, especially widows in their late fifties, who are already drawing pensions, or would be eligible to draw them within 5 years of the date of enactment of this bill, based on their non-covered work and whose retirement income was planned for on the assumption of the availability of full wife's or widow's benefits under social security. Inclusion of [the pension offset exception] to the applicability of the [pension offset] provision, reinforces its prospective nature and avoids penalizing people who are already retired, or close to retirement, from public employment and who cannot be expected to readjust their retirement plans to take account of the "offset" provision that will apply in the future.

H.R.Conf.Rep. No. 95–837, 95th Cong., 1st Sess. 72, *reprinted in* 1977 *U.S.Code Cong. & Ad.News,* 4155, 4308, 4318.

The Congress, in deciding to adopt a five-year exception to the implementation of the pension offset, decided to allow those women who were eligible both for a government pension and Social Security benefits and who were scheduled to retire within the next five years to receive both their pension and their Social Security en-

***

* A moment's reflection reveals that the only women the pension offset exception might deter from seeking divorce are those women who in 1977 had been married for more than fifteen years but less than twenty years and who were

eligible to retire within five years of January 1977. It is most unlikely that Congress passed the entire pension offset exception merely to deter from divorce one subset (likely a small one) of all women affected by the exception.

titlement; Congress further decided that the eligibility of that group of women would be governed by the eligibility requirements which had been in effect up to that time on which that group of women presumably had relied in making their post-retirement plans. Those requirements included a 20-year marriage duration prior to divorce. This action by Congress cannot be ruled to be either irrational or arbitrary and consequently passes constitutional muster.

Plaintiff also alleges that the pension offset exception violates her constitutional right to privacy by infringing her right to marry and obtain a divorce. This contention need not be considered at length because the Supreme Court's recent decision in *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), shows that plaintiff suffered no infringement at all of her right to privacy.

Plaintiffs in *Harris* challenged the Hyde Amendment on due process grounds. The Hyde Amendment prohibited use of federal funds in the Medicaid program to reimburse the cost of abortions except in cases of rape and incest, and in cases where the life of the mother was in danger. Plaintiffs there argued that, by making a woman's choice to carry the pregnancy to term more attractive than a decision to abort, the Amendment "penalized" a woman's exercise of the right to abort the fetus. The Court ruled that the Amendment "represents simply a refusal to subsidize certain protected conduct. A refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity." 448 U.S. at 317 n. 19, 100 S.Ct. at 2688 n. 19. *See also Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977).

Accordingly, I rule that the appeal should be dismissed and the decision of the Secretary should be affirmed.

Order accordingly.