**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-1726

David C. Singleton,              *
                                 *
         Appellant,              *
                                 * Appeal   from   the   United
States
     v.                          * District Court for the
                                 * Eastern    District    of
Missouri.
Don Cecil, Individually and in his                *
official capacity as Chief of Police;             *
Harley Moyer; Ivan Parker; Kevin                  *
Tidwell; Della Price; City of Advance,            *
                                 *
         Appellees.              *

_____

Submitted:  November 18, 1997
                         Filed:  January 8,
1998
_____

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and
     MAGILL, Circuit Judges.
_____

MAGILL, Circuit Judge.

     After the City of Advance, Missouri, terminated the
employment of police officer David Singleton, Singleton
sued the City of Advance's police chief and members of its
city council under 42 U.S.C. § 1983 (1994).  Singleton
initially claimed that he was terminated in retaliation
for his knowledge of the police chief's allegedly improper

purchase of an automobile.  After discovery revealed that
Singleton was discharged

because his wife and daughter had plotted to frame the police chief, Singleton amended his complaint to claim that his termination infringed on his rights of free speech, association, privacy, and due process. The district court[1] granted summary judgment to the defendants on all claims. Singleton appeals only the grant of summary judgment on his claims that the termination infringed on his fundamental right of privacy in the marital relationship and on his right to intimate familial association. We affirm.

## I.

The City of Advance, Missouri, employed plaintiff David Singleton as a police officer from 1990 until his termination in March 1994. During the period relevant to this appeal, defendant Don Cecil served as the City of Advance's police chief. Defendants Harley Moyer, Ivan Parker, Kevin Tidwell, and Della Price were elected members of the City of Advance's city council. William Bradshaw, the mayor of Advance during this period, was not a named defendant. The City of Advance did not have a written employment agreement with Singleton. Under Missouri law, Singleton's employment was terminable at will, either by the mayor with approval of a simple majority of the city council, or by a two-thirds vote of the city council. See Mo. Ann. Stat. § 79.240 (West 1987); State ex rel. Lupo v. City of Wentzville, 886 S.W.2d 727, 730-31 (Mo. Ct. App. 1994).

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

On the morning of March 8, 1994, Joann Singleton, the plaintiff's wife, called Sabrina Scaggs, the plaintiff's daughter, on a cordless telephone. Their conversation turned to the subject of Police Chief Cecil, who, in David Singleton's view, had purchased for his own benefit a red 1994 Ford Crown Victoria under an incentive

program designed only for government purchases.[2]  At one point in the conversation, Joann Singleton remarked that she wanted to "set up" Cecil by hiring someone to bribe him.  Scaggs Dep. at 57, reprinted in Appellees' App. at 237.  Unfortunately for the Singletons, this statement was recorded by private investigator David George.  Throughout March 1994, George monitored cordless phone channels in the City of Advance with his radio scanner, "[m]ore or less" for entertainment purposes.  George Dep. at 37, reprinted in Appellees' App. at 228. George played the tape for Police Chief Cecil and the mayor and later gave Cecil a copy of the tape.

Over the next few days, Police Chief Cecil played the tape for the city council members individually.  Each recognized the voices on the tape as Joann Singleton and Sabrina Scaggs.  At a special meeting on March 11, 1994, the city council unanimously voted to terminate Singleton's employment as a police officer, based on the recording of Joann Singleton plotting to frame Police Chief Cecil.  See Tidwell Aff. at 3-4, reprinted in Appellees' App. at 134-35; Moyer Aff. at 3-4, reprinted in Appellees' App. at 139-40; Parker Aff. at 3-4, reprinted in Appellees' App. at 144-45; Price Aff. at 3-4, reprinted in Appellees' App. at 149-50.  Singleton received a

---

[2]Mayor Bradshaw and the city council members had prior knowledge of Police Chief Cecil's purchase and considered the car available for use by the city as a backup police vehicle. See Bradshaw Dep. at 30, reprinted in Appellees' App. at 90; Tidwell Aff. at 1-2, reprinted in Appellees' App. at 132-33; Moyer Aff. at 1, reprinted in Appellees' App. at 137; Price Aff. at 1, reprinted in Appellees' App. at 147. Despite David Singleton's belief that Police Chief Cecil had engaged in illegal activity, Singleton never notified any law enforcement officials, the mayor, or the city council of his concerns.

discharge letter dated March 11, 1994, which did not state a reason for his termination.

Singleton then sued Police Chief Cecil and the city council.  Singleton's initial complaint alleged wrongful discharge and a violation of procedural due process. Singleton later amended this complaint to allege that the City of Advance violated his

First Amendment, due process, and privacy rights by terminating him in retaliation for his knowledge of Police Chief Cecil's automobile purchase. During discovery, Singleton learned that the defendants' sole reason for their action was the recording of Joann Singleton plotting to bribe the chief of police. On November 11, 1996, Singleton again amended his complaint to include the additional claims that the dismissal based on his wife's statement violated Singleton's rights of free speech, intimate association, privacy, and due process.

Based solely on the second complaint,[3] the defendants moved for summary judgment. Singleton did not respond to this motion. The district court ruled on all of the claims in the third amended complaint and granted summary judgment for the defendants. The district court concluded that Singleton could not show retaliatory discharge because insufficient evidence connected Singleton's allegedly protected conduct (the intended whistle-blowing) and his termination. The district court also held that, as an employee at will under Missouri law, Singleton did not have a liberty or property interest in his employment sufficient to implicate procedural due process rights. Finally, the district court held that the defendants did not violate Singleton's privacy or associational rights and noted that the defendants "had a legitimate, good faith belief that plaintiff, with his family, was engaging in improper conduct by conspiring to bribe the Chief of Police." Mem. and Order (Feb. 20, 1997) at 8, reprinted in Appellant's App. at 95.

---

[3]Due to an oversight on behalf of Singleton's counsel, the third amended complaint was never properly served on the defendants.

Singleton appeals only the district court's determination that the city did not violate his substantive due process right of privacy in his martial relationship and his First Amendment right of intimate association.

## II.

We review the district court's grant of summary judgment de novo. Morgan v. Rabun, 128 F.3d 694, 696 (8th Cir. 1997). Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to Singleton, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the material facts in this case are undisputed, we are left solely to determine whether the City of Advance is entitled to judgment as a matter of law.

Singleton acknowledges that his employment as a police officer was terminable at the will of the City of Advance. Advance could thus terminate Singleton for any reason or no reason at all. See Cooper v. City of Creve Coeur, 556 S.W.2d 717, 721 (Mo. Ct. App. 1977) ("The determination of the adequacy of the grounds for [an employee at will's] discharge is not subject to judicial review because the city could discharge him for no reason or for any reason."). Our inquiry is therefore limited to whether the City of Advance's termination of Singleton infringed on his constitutional rights. See Frazier v. Curators of the Univ. of Mo., 495 F.2d 1149, 1153 (8th Cir. 1974) (nontenured public employee may be terminated "provided the dismissal is not in fact based upon some constitutionally impermissible ground, such as . . . retaliation for assertion of rights guaranteed by law or the Constitution").

Singleton claims that his termination violated his substantive due process right of privacy in his marital

relationship.[4]  The fundamental right of privacy embodies the

[4]The only disputed privacy right in this case is located in the substantive component of the Fourteenth Amendment's due process clause.  This case does not concern the privacy of communications over cordless telephones, which are not constitutionally protected.  See Tyler v. Berodt, 877 F.2d 705, 706-07 (8th Cir. 1989) (per curiam) (no justifiable expectation of privacy in oral communication over cordless telephone).  Subsequently, communications over cordless telephones have received statutory protection.  See Communications Assistance for Law Enforcement Act,  Pub. L. No. 103-414, § 202, 18 Stat. 4279, 4290-91 (enacted Oct. 25, 1994) (amending 18 U.S.C. §§ 2510-11).

"principle that personal decisions that profoundly affect bodily integrity, identity, and destiny should be largely beyond the reach of government."  Planned Parenthood v. Casey, 505 U.S. 833, 927 (1992) (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part).  The Supreme Court has recognized "that the right to marry is part of the fundamental 'right of privacy' implicit in the Fourteenth Amendment's Due Process clause."  Zablocki v. Redhail, 434 U.S. 374, 384 (1977).  This right, however, does not invalidate every state action that has some impact on marriage.  See Gorrie v. Bowen, 809 F.2d 508, 522-23 (8th Cir. 1987) ("Not every regulation that involves or somehow regulates on the basis of family membership is unconstitutional.").  Rather, the government is free to impose "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship . . . ."  Zablocki, 434 U.S. at 386.  Government action "must interfere 'directly and substantially' with family choices before it is unconstitutional,"  Gorrie, 809 F.2d at 523 (quoting Zablocki, 434 U.S. at 387) (citation omitted), but action having only a collateral effect on family decisions typically does not violate that right.  Compare Zablocki, 434 U.S. at 388-91 (striking down statute that prohibited individuals from marrying until compliance with preexisting child support obligations proven) with Califano v. Jobst, 434 U.S. 47, 52-54 (1977) (upholding statute that terminated Social Security benefits of dependent children on marriage to individuals not entitled to benefits).

In this case, the City of Advance did not directly or substantially interfere with Singleton's right to be

married when they terminated him on the basis of his wife's recorded statement threatening to frame the police chief.    Singleton  presented  no  evidence  that  his termination "significantly discouraged, let alone made 'practically  impossible,'"  his  marriage  to  Joann Singleton.  <u>Zablocki</u>, 434 U.S. at 387 n.12.  Nor is

there evidence that the City of Advance acted with the goal of poisoning Singleton's marriage. Cf. Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1440 (10th Cir. 1990) ("A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship."). As the scope of substantive due process rights should be viewed narrowly, see Washington v. Glucksberg, 117 S. Ct. 2258, 2267-68 (1997) (extending substantive due process rights, "to a great extent, place[s] the matter outside the arena of public debate and legislative action"), we do not expand the right of marriage to protect Singleton here.

Singleton also alleges that the City of Advance infringed on his intimate association right. As a component of the First Amendment right of association, the right of intimate association guards against excessive government intervention into "the formation and preservation of certain kinds of highly personal relationships . . . ." Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984). The right to marry has thus been cast as a substantive due process right, see Loving v. Virginia, 388 U.S. 1, 12 (1967), and as an associational right, see Roberts, 468 U.S. at 619. The nominal source of this right, however, does not alter this Court's analysis of the challenged government action. See Lyng v. International Union, United Auto., Aerospace, & Agric. Implement Workers of Am., 485 U.S. 360, 365-66 (1988) (applying direct and substantial interference standard to First Amendment right of family association); Montgomery v. Carr, 101 F.3d 1117, 1124 (6th Cir. 1996) ("[T]he level of scrutiny to be applied to state action impinging on the right to marry is invariant with respect to the precise

-13-

constitutional provision undergirding that right."). In both instances, the government remains free to act in a fashion that does not directly and substantially interfere with the right to marry. Singleton's assertion of an intimate associational right must fail for the same reasons as does his assertion of a fundamental right of privacy. The City of Advance's termination of Singleton on the basis of his wife's conduct simply did not substantially or directly interfere with Singleton's right to enter and maintain his marital relationship.

Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants.

RICHARD S. ARNOLD, Chief Judge, dissenting.

I can agree that plaintiff has failed to establish a violation of those aspects of the Due Process Clause of the Fourteenth Amendment that have been particularized as the rights of intimate association and marital privacy. But Mr. Singleton makes an additional argument that the Court's opinion fails to address. He claims (and the City admits) that he was fired solely because of what his wife said to his daughter on the telephone. He argues that this "is precisely the kind of arbitrary and capricious logic that fails to pass even the most relaxed scrutiny . . . under substantive due process." Brief for Appellant 15. The Due Process Clause stands as a protection against all purely arbitrary governmental action - for example, a rule against hiring anyone whose name begins with "A." In my view, it is this more general aspect of substantive due process that provides plaintiff with a winning argument.

In our legal tradition, fault is individual. A is not punished for what B does, let alone for what B says. Is the situation different when A and B are married? At common law, it was. If a wife committed a crime in the presence of her husband, she was presumed to have acted at his direction, and he was held responsible. Presumably any such rule would be constitutionally condemned today under the Due Process Clause. Is what happened here any more defensible? I think not. In a related context, we have held that a husband's political opinion cannot be automatically attributed to his wife. Forbes v. Arkansas Educational Television Comm'n, 93 F.3d 497, 501-02 (8th Cir. 1996) ("We do not think any general inference can be drawn from the opinion of one spouse to that of the other."), cert. granted on other grounds, 117 S. Ct. 1243 (1997).

The District Court's opinion, quoted <u>ante</u> at 4, says that the City had "a legitimate, good faith belief that plaintiff, with his family, was . . . conspiring to bribe the Chief of Police." This would doubtless make the case quite different. A city is entitled to have police officers in its employ who are not conspiring to bribe the Chief. A reasonable belief that an officer is conniving at such conduct would certainly be a rational, non-arbitrary basis for discharge. But what is the evidence for this statement (aside from the bare fact of the marital relationship)? The District Court cited none, this Court cites none, and I know of none.

I respectfully dissent.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.