In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1096

KIMBERLY K. BENEDIX,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF HANOVER PARK, ILLINOIS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 3072—**Harry D. Leinenweber**, *Judge*.

ARGUED SEPTEMBER 19, 2011—DECIDED APRIL 17, 2012

Before EASTERBROOK, *Chief Judge*, and KANNE and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The Village of Hanover
Park fired Marc Hummel from his position as Village
Manager. That is the sort of job for which politics is a
legitimate qualification (or disqualification). See *Branti v.
Finkel*, 445 U.S. 507 (1980). At the same time as they ousted
Hummel, the Village President and Board of Trustees
restructured the work force. An ordinance abolished

three positions and created one new slot. Kimberly Benedix had occupied one of the three abolished positions: Executive Coordinator to the Village Manager. She filed this suit under 42 U.S.C. §1983, contending that the Village, the President, and three of the Trustees violated the first amendment (applied to the states by the fourteenth) by holding her associations against her. Benedix contends that she was canned because she was associated with (and a friend of) Hummel, who had lost a political struggle, after which the defendants decided to clean out Hummel's office.

Because the Village implemented its plan through an ordinance, the district court dismissed the complaint on the ground of legislative immunity. See 2010 U.S. Dist. LEXIS 129746 (N.D. Ill. Dec. 8, 2010). Despite Benedix's protest that this ordinance wasn't "really" legislation because it had her as a target, we agree with the district court that an ordinance adopted through the legislative process, and having the force of law, is covered by legislative immunity no matter the motives of those who proposed, voted for, or otherwise supported the proposal. See *Tenney v. Brandhove*, 341 U.S. 367 (1951); *Rateree v. Rockett*, 852 F.2d 946 (7th Cir. 1988).

But the district judge failed to notice that the Village is among the defendants. Section 1983 imposes liability on state and municipal governments for their own unconstitutional policies, see *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and legislation makes the elimination of Benedix's position the Village's official policy. Municipalities do not enjoy any kind of

immunity from suits for damages under §1983. See *Owen v. Independence*, 445 U.S. 622 (1980). Thus legislative immunity for the President and Trustees does not allow a court to end the suit. And since this suit was dismissed on the pleadings, we must assume that the main, if not the only, reason for the new ordinance was to get rid of the ousted Village Manager's staff. (Benedix contends that the Village Manager's position was itself abolished and that the President and Trustees took over management through a new position called Village Collector. This detail does not affect the analysis.)

Benedix contends that association should be treated the same as politics for purposes of the rule that a public employer cannot hire or fire (most) employees on the basis of speech. See, e.g., *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990); *Elrod v. Burns*, 427 U.S. 347 (1976). This is not at all clear to us—and not only because the right of association is derived from other constitutional rights rather than being a free-standing entitlement. Courts often say that intimate association is constitutionally protected, see *Turner v. Safley*, 482 U.S. 78 (1987) (marriage is a fundamental right), but anti-nepotism statutes are common. Hanover Park could prevent the Village Manager from hiring his wife or child as Executive Coordinator; and if the closest kinds of association are legitimate grounds of deciding who occupies what positions in government, what's wrong with considering more distant kinds of association, such as friendship? Cf. *Califano v. Jobst*, 434 U.S. 47 (1977) (Social Security benefits may be reduced following marriage, even though this discourages intimate association).

It is common to hold a person's associations against him. For example, when an Attorney General leaves office, all of the special assistants, executive assistants, special assistants to the deputy executive assistants, and the rest of the coterie go too, so that the new Attorney General can choose his own aides. Policy-making officials such as an Attorney General and a Village Manager need an immediate staff of dedicated aides if they are to do their jobs—and if the results of elections are to be translated into policy. It would disrupt this process, and undermine the right of the people to change policies by replacing officeholders, if a contention such as "I was a friend of the outgoing Attorney General and supported his policies" insulated the assistant from removal, the new Attorney General would arrive to find a potential saboteur in his entourage.

To put this differently, it is an important part of the new officeholder's own right of association to be able to choose who to work with, the better to promote his ideas and policies. Cf. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557 (1995) (organizers of a parade may choose who can march and who can't, so that they can convey their own message). This may be why neither *Elrod* nor any of its successors suggested that friendship with an ousted officeholder is a forbidden ground of action in making personnel decisions. Benedix has not cited, and we could not find, any appellate decision holding that friendship is a constitutionally impermissible basis of hiring or firing public employees.

But we need not decide whether Hanover Park could have removed all of Hummel's friends no matter what position they held. The need for the new Village Manager to have a loyal staff does not imply a need for the Village to get rid of, say, the ousted Village Manager's next door neighbor who had a job as a kindergarten teacher. Benedix was the Executive Coordinator to the Village Manager. According to her brief, "she reported directly to and worked closely with Village Manager Hummel." She contends that Executive Coordinator was not a policy-making job, and so we shall assume, but a position as a policymaker's right-hand woman must be deemed a "confidential" one. Hummel had only two assistants, including Benedix. A new Village Manager (or Village Collector) who arrived and found that 50% of his staff was committed to his political adversary would not be able to do his job.

*Elrod* and its successors say that politics is an appropriate ground of decision for policymaking *and* confidential positions. We understand "confidential" positions to include those in the policymaker's immediate office—not only those who hear confidences (such as the policymaker's secretary or executive assistant) but also the persons responsible for recommending and implementing the policies. See *Faughender v. North Olmstead*, 927 F.2d 909, 913–14 (6th Cir. 1991) (mayor's secretary is a "confidential" position); *Soderbeck v. Burnett County*, 752 F.2d 285, 288 (7th Cir. 1985) ("you cannot run a government with officials who are forced to keep political enemies as their confidential secretaries"). An Executive Coordinator who reports directly to, and works closely

with, a policymaker such as the Village Manager is properly classified as a "confidential" employee who may be hired and fired on account of politics—or friendship. No matter what one makes of associational rights, friendship cannot have greater status than political speech.

Benedix presented some state-law claims under the supplemental jurisdiction. The district judge dismissed them, concluding that they are blocked by a state statute that prevents awards of damages based on legislative activity. 745 ILCS 10/2-205. We agree with that conclusion. Benedix has not made a claim under state law directly against the Village, so the judgment of the district court is

AFFIRMED.