**Deborah MORAN, Plaintiff-Appellant,**

v.

**Daniel BEYER, Defendant-Appellee.**

No. 83–1667.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1983.

Decided May 21, 1984.

Ted K. Yasuda, Sidley & Austin, Chicago, Ill., for plaintiff-appellant.

Dennis J. Mank, Van Kecke & Mank, S.C., Milwaukee, Wis., for defendant-appellee.

Before BAUER, FLAUM, Circuit Judges, and EVANS, District Judge.[1]

TERENCE T. EVANS, District Judge.

At issue on this appeal is the constitutionality of Illinois' interspousal tort immunity statute. The district court, on a motion for summary judgment, rejected the constitutional challenge to the statute and dismissed those portions of Deborah Moran's suit against her husband in which she alleged that he had beaten her. We reverse.

I.

Ms. Moran alleges in her complaint that, a short time after she was married to Daniel Beyer, he became increasingly hostile towards her. Her complaint details a number of disputes between the two which ended in physical injury to her. The injuries included cuts, bruises and a broken nose. Beyer's answer admits his part in the violence Moran describes, but replies that his actions were justified. He claims extreme provocation and self-defense. By Christmas of the year after the marriage, Moran had moved away from Beyer. At the time this action was commenced, the two were no longer married. In her suit, Moran alleged one count of assault and battery and one count of intentional infliction of emotional distress. Beyer counterclaimed, alleging the same.

Had the paths of these two individuals crossed under any circumstances other than marriage, the district court[2] would have proceeded to weigh their allegations and decide who, on the basis of the evidence, should win the case. However,

---

1. The Honorable Terence T. Evans, Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

2. Most cases of this sort would, of course, be resolved in state court. This one is in the federal system because the parties, at the time the suit was commenced, lived in different states.

since Moran and Beyer were married, the district court was confronted with Ill.Rev. Stat., ch. 40, § 1001 (1980), which was controlling at that time, and which commanded that:

A married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; provided, that neither husband nor wife may sue the other for a tort to the person committed during coverture.[3]

Beyer moved for summary judgment on the ground that Moran's action was barred by this provision of Illinois law. The trial court was persuaded, summary judgment was granted in Beyer's favor, and this appeal was commenced. The thrust of Moran's appeal is that her Fourteenth Amendment right to equal protection of the laws is violated by a statute which prohibits a married person from pursuing the same remedy for the same kind of injuries which an unmarried person is free to pursue.

## II.

In evaluating ch. 40, § 1001 under the Equal Protection Clause, "we must first determine what burden of justification the classification created thereby must meet, by looking to the nature of the classification and the individual interests affected." *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 253, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974). Moran argues that the statute is constitutionally suspect under both the "strict judicial scrutiny" standard and the less rigorous "rational relationship" test. *See San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973).

## A.

■ We decline the invitation to declare that the interests upon which ch. 40, § 1001 impinges are so fundamental that they justify the protections of strict judicial scrutiny[4]. It is true, as Moran argues, that the courts have come to confer this heightened protection upon certain decisions relating to marriage. *See Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (right to marry); *Boddie v. Connecticut,* 401 U.S. 371, 376–377, 91 S.Ct. 780, 785–786, 28 L.Ed.2d 113 (1971) (right to divorce); *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541–542, 62 S.Ct. 1110, 1113–1114, 86 L.Ed. 1655 (1942) (procreation); *Eisenstadt v. Baird,* 405 U.S. 438, 453–454, 92 S.Ct. 1029, 1038–1039, 31 L.Ed.2d 349 (1972) (contraception); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (family relationships); *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (child rearing and education).

However, not every choice made in the context of marriage implicates the privacy and family interests which make certain marital decisions fundamentally important. *See Califano v. Jobst,* 434 U.S. 47, 54, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1978). The decision to bring suit against a spouse does not so strategically advance privacy or family interests that the decision itself accedes to the status of a fundamental right. Nor does a statute limiting the exercise of this choice constitute a direct legal obstacle to marriage. Also, the statute does not so significantly discourage marriage that it merits the "rigorous scrutiny" which has been applied to other regulations qualifying marital rights. *See Zablocki v. Redhail,* 434 U.S. 374, 386, 387 n. 12, 98 S.Ct.

---

**3.** The statute has since been altered to abrogate interspousal immunity in cases of intentional tort. In 1981, the Illinois Domestic Violence Act, Pub. Act 82–621, 1981 Ill.Laws 3200 (1981), effective March 1, 1982, amended the statute to read:

A married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; provided that neither husband nor wife may sue the other for a tort to the person committed during coverture, except for an intentional tort where the spouse inflicted physical harm. *Id.* at § 403; Codified as Ill.Rev.Stat., ch. 40, § 1001 (1982).

**4.** Although strict scrutiny is also appropriate in certain cases involving suspect classes, Moran does not argue that married persons constitute such a class.

673, 681, 682 n. 12, 54 L.Ed.2d 618 (1978). Accordingly, *strict scrutiny of the statute is not required.*

### B.

■ Thus, we turn to Moran's second line of argument. She contends that there is no rational relationship between the statutory classification and the Illinois legislature's purpose in enacting it. The pertinent inquiry is whether the scheme, which prevents a married person from seeking a remedy which is available to an unmarried person, "advances a reasonable and identifiable governmental objective." *Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981). The analysis breaks down into two questions: (1) whether the statute's purpose is reasonable, and (2) whether the statute rationally advances that purpose.

Without question the purpose behind creating interspousal tort immunity is reasonable. Maintaining marital harmony is an admirable goal, especially considering the numerous social problems to which marital strife gives rise.[5]

However, we cannot agree with the district court that ch. 40, § 1001, is rationally related to this goal. It truly would take "something more than the exercise of strained imagination," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 442, 102 S.Ct. 1148, 1161, 71 L.Ed.2d 265 (1982) (Blackmun, J., concurring), to find some objective basis for believing that depriving a physically battered spouse of a civil remedy for her injuries will advance some sense of "harmony" with the person who inflicted the injury. Dean Prosser eloquently dismantled this justification when he observed that the "domestic harmony" rationale rests upon

> the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; that if

she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and even though she has left him or divorced him for that very ground[.]

Prosser, *Torts*, 863 (4th ed. 1972). The immunity rule confuses cause and effect. Because the immunity rule leaves unchecked the actual cause of marital discord—such as the assault and battery committed in this case—it can do absolutely nothing to further marital harmony. Indeed, for a knowledgeable couple leery of marriage, the statute may do more to retard the institution than further it: unmarried persons living together can still resort to the courts for protection from a "partner", while a married person has no such protection against his or her spouse. Finally, added to these inconsistencies is the fact that nothing in the statute prevents one spouse from undermining domestic tranquility altogether by swearing out a criminal complaint against the other.

Other rationales which have been advanced in support of the statute are even less tenable under the circumstances of this case. While there is a danger of fraud or collusion between spouses where insurance proceeds or the like are at stake, as there is in almost every case involving third party insurance, that danger is very low in the case of intentional torts involving serious physical injury. Similarly, the fear of a flood of frivolous suits wasting limited judicial resources is unfounded. This flood does not appear to have materialized in states which permit suits between spouses. *See, e.g., Flores v. Flores*, 84 N.M. 601, 506 P.2d 345, 347 (1973).

For his part, Beyer urges us to yield to the wisdom of the Illinois legislature. This is the restrained position which Illinois courts have taken in construing ch. 40, § 1001. *See Steffa v. Stanley*, 39 Ill.

---

**5.** Moran submits that marital harmony is not the actual purpose behind the statute, but rather a *post hoc* justification. Moran's argument traces the statute to its archaic common law roots, where husband and wife were treated as a legal unit, incapable of suing itself. Without disputing the considerable authority supporting this position, we choose to give the benefit of the doubt to the purpose put forth by contemporary defenders of the statute.

App.3d 915, 350 N.E.2d 886 (1979)[6]. We do not share the reluctance of these state courts. To begin with, we are faced with facts of a more egregious character than *Steffa*, which arose out of an automobile accident. Furthermore, we cannot find it at all rational to believe that the Illinois legislature's desire to protect marital harmony is fulfilled by ch. 40, § 1001, which does little more than grant one spouse almost unconditional license to make his marriage partner a sparring partner. We are, therefore, compelled to declare it unconstitutional.

Accordingly, the decision of the District Court is REVERSED, the judgment entered on behalf of Beyer is VACATED, and this action is REMANDED to the district court for further proceedings.

---

**6.** This respect for legislative sagacity has not tempered the courts' criticism of the rule itself. One court described the immunity rule as a "devious attempt to save that which is already lost," *Schenk v. Schenk*, 100 Ill.App.2d 199, 203, 241 N.E.2d 12 (4th Dist.1968). *See also Steffa*, 350 N.E.2d at 889 ("interspousal tort immunity is an outmoded concept based upon ... common law fiction").