**WOMEN INVOLVED IN FARM ECONOMICS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.**

Civ. A. No. 87–1752.

United States District Court,
District of Columbia.

March 31, 1988.

Joan Klein Roth and Edward M. Kimmel, Washington, D.C., for plaintiff.

Asst. U.S. Atty. John M. Facciola, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiff, a national non-profit women's agricultural trade association, brings this action against defendants under the fifth amendment and the Administrative Procedure Act ("APA"), challenging a regulation promulgated by the Secretary of the Department of Agriculture that treats a husband and wife as one "person" for purposes of a $50,000 limitation on agricultural crop subsidy payments. The matter now comes before the Court on the parties' cross-motions for summary judgment and on defendants' motion to dismiss for mootness. For the reasons set forth below, defendants' motion to dismiss and motion for summary judgment are denied, and plaintiff's motion for summary judgment is granted.

## I. STATUTORY FRAMEWORK

Under 7 U.S.C. § 1308, annual payments for the years 1986 through 1990 that "a person shall be entitled to recover" under certain agricultural crop subsidy programs administered by the Agricultural Stabilization and Conservation Service are limited to $50,000. In 1970, acting in his discretion to define the term "person" and to prescribe "such rules as the Secretary determines necessary to assure a fair and reasonable application of the limitation established under the section," 7 U.S.C. § 1308(5)(A), the Secretary of Agriculture promulgated federal regulations implementing Section 1308. 35 Fed.Reg. 19339 (Dec. 20, 1970). The Secretary set out three primary substantive criteria for an "individual, joint stock company, corporation, association, trust, estate, or other legal entity" to be con-

sidered a "person." Specifically, the individual or other legal entity must:

(a) Have a separate and distinct interest in the land or the crop involved,

(b) Exercise separate responsibility for such interest, and

(c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

7 C.F.R. § 795.3. Partnerships and joint operations may also be considered separate persons if

the individual or other legal entity is actively engaged in the farming operations of the partnership or other joint operation. An individual or other legal entity shall be considered as actively engaged in the farming operation only if its contribution to the joint operation is commensurate with its share in the proceeds derived from farming by such joint operation. Members of the partnership or joint venture must furnish satisfactory evidence that their contributions of land, labor, management, equipment, or capital to the joint operation are commensurate with their claimed shares of the proceeds.

7 C.F.R. § 795.7.

One category of individuals, however, was automatically barred from qualifying for separate payments regardless of whether they satisfied these interest, contribution, responsibility, and active engagement criteria: married couples. 7 C.F.R. Section 795.11 provides: "A husband and wife shall be considered as one person." It is this regulation that plaintiff challenges here.

## II. ANALYSIS

### A. Fifth Amendment

Plaintiff challenges Section 795.11 under the fifth amendment both as an infringement on the fundamental right to marry and as impermissible discrimination on the basis of gender.[1]

---

**1.** Defendants challenge plaintiff's standing to "make certain arguments" related to the constitutionality of Section 795.11 because, defendants argue, plaintiff has not alleged that its members have been adversely affected by the

rule in all the situations that plaintiff suggests in its brief. This argument is without merit.

The affidavit of Naioma Benson, President of Women Involved in Farm Economics, makes clear that the organization's members are ad-

The appropriate level of scrutiny to be applied to a challenged regulation is determined by the nature of the right or classification involved. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 253, 94 S.Ct. 1076, 1079, 39 L.Ed.2d 306 (1974). When the regulation "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class," then strict scrutiny is to be applied. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). Under the strict scrutiny standard, a statutory classification cannot be upheld "unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978).

The right to marry is fundamental. *Zablocki*, 434 U.S. at 383, 98 S.Ct. at 679; *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967). The threshold issue here is whether Section 795.11 "directly and substantially interferes" with the right. *Zablocki*, 434 U.S. at 387, 98 S.Ct. at 681. Only then is strict scrutiny appropriate.

In drawing the line between cases where state regulation "directly and substantially interferes" with the right to marry and those where it does not, the courts have distinguished between state action that attempts to affect an individual's decision to enter into a marital relationship and legislation or regulations that merely set up classifications for state benefits based on marital status. *See Zablocki*, 434 U.S. at 386, 98 S.Ct. at 681 (citing *Califano v. Jobst*, 434 U.S. 47, 55 n. 12, 98 S.Ct. 95, 100 n. 12, 54 L.Ed.2d 228 (1977)); *id.* 434 U.S. at 403–04, 98 S.Ct. at 690 (Stevens, J., concurring in judgment). Heightened scrutiny is mandated where the government has directed that a person "may only marry if," for example, she obtains the state's permission, *Zablocki*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618,[2] *Israel v. Immigration and Naturalization Service*, 785 F.2d 738 (9th Cir.1986),[3] is able to pay a filing fee, *see Zablocki*, 434 U.S. at 387, 98 S.Ct. at 681; *see also Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971),[4] or is of a certain race. *Loving*, 388

versely affected by the regulation in numerous different ways and this is broadly alleged in the complaint. Plaintiff need not list every possible permutation by which its members could qualify for separate payments under existing regulations aside from Section 795.11 to attack the regulation's constitutionality. Some WIFE members owned and operated farms separately from their husbands before and after marriage. Some separately acquired, owned, and operated their farms during marriage. These asserted injuries are sufficient to confer standing to assert the constitutional challenge in this action. *See National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 693 (D.C.Cir. 1971) (organizational standing); *see also National Association of Neighborhood Health Centers v. Mathews*, 551 F.2d 321, 328–29 (D.C.Cir.1976).

2. The challenged statute in *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) provided that "no Wisconsin resident in the affected class may marry in Wisconsin or elsewhere without a court order, and marriages contracted in violation of the statute are both void and punishable as criminal offenses." *Id.* at 387, 98 S.Ct. at 681.

The Court focused on the direct prohibitive impact of the statute: "Some of those in the affected class, like appellee, will never be able to obtain the necessary court order, because they either lack the financial means to meet their support obligations or cannot prove that their children will not become public charges. These persons are absolutely prevented from getting married." *Id.*

3. Though similar at first blush to *Zablocki* and *Israel*, *Turner v. Safley*, — U.S. —, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), cited by defendants, in which the Supreme Court held unconstitutional a regulation permitting prison inmates to marry only with the permission of the prison superintendent is, upon examination, inapposite. In that case, the Court applied a unique standard of scrutiny because of the prison setting, requiring only that the statute be reasonably related to legitimate penological interests of the state. *Id.* 107 S.Ct. at 2261.

4. Filing fees that prohibit indigent couples from marrying constitute this type of direct interference. *See, e.g., Murillo v. Bambrick*, 681 F.2d 898 (3d Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982) (court declined to apply strict scrutiny to $50 filing fee in matrimonial actions because fee did not prohibit individuals from obtaining a divorce); *but see id.* at 916 (dissent suggesting that some indigent mar-

U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (miscegenation).[5] Where, however, the government has classified state benefits, such as employment[6] and welfare benefits,[7] or state burdens, such as taxes,[8] on the basis of marital status, strict scrutiny is not warranted. *Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228.[9] The distinction is more than semantic; it is based on the principle that the Constitution protects individuals from intentional state action that interferes in the privacy and family interests that make certain marital decisions fundamentally important. *Zablocki,* 434 U.S. at 387 n. 12, 98 S.Ct. at 681 n. 12; *Moran v. Beyer,* 734 F.2d 1245, 1246 (7th Cir.1984).[10]

■ The husband-wife rule does not prohibit or condition the right to marry on any test created by the government. Instead, it classifies beneficiaries of a federal program based on marital status. It is not, therefore, the type of regulation where the Supreme Court has applied strict scrutiny.

The Tenth Circuit reached this same conclusion in a similar challenge to Section 795.11 seven years ago. In *Martin v. Bergland,* 639 F.2d 647 (10th Cir.1981), the court concluded that "Section 795.11 is not such a direct and substantial burden on appellants' freedom to marry that it should be strictly scrutinized." *Id.* at 649. Merely because the statute may deter some people from getting married or burden some who do marry, *Jobst,* 434 U.S. at 54, 98 S.Ct. at 99, or encourages couples to modify their living arrangements, *Bowen v. Gilliard,* —— U.S. ——, 107 S.Ct. 3008, 3017 n. 8, 97 L.Ed.2d 485 (1987), *Sturgell v. Creasy,* 640 F.2d 843, 853 (6th Cir.1981), does not render it a direct and substantial interference with the freedom to marry. While the regulation may well, as plaintiff contends, "deprive[ ] women of significant financial agricultural income, and in some instances, the viability of their farming operation, solely on the basis of whether or not they choose to marry," Plaintiff's Motion for Summary Judgment, at 7, this reg-

---

ried individuals might not be able to afford even this minimal filing fee).

**5.** This same focus on interference with the decision *to enter into* marriage motivates the courts' frequent mention of whether the regulation at issue actually deterred the individual challenging it from getting married. *See Zablocki,* 434 U.S. at 387 n. 12, 98 S.Ct. at 681 n. 12; *Cutts v. Fowler,* 692 F.2d 138, 141 (D.C.Cir.1982).

**6.** *See, e.g., Cutts v. Fowler,* 692 F.2d at 141 (burden imposed by anti-nepotism rule too "attenuated and indirect" to invoke strict scrutiny); *Parsons v. County of Del Norte,* 728 F.2d 1234 (9th Cir.), *cert. denied,* 469 U.S. 846, 105 S.Ct. 158, 83 L.Ed.2d 95 (1984) (no-nepotism rule not subject to strict scrutiny).

**7.** *Bowen v. Gilliard,* —— U.S. ——, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485 (1987) (AFDC benefits); *Lyng v. Castillo,* 477 U.S. 635, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986) (Food Stamp program definition of "household"); *Sturgell v. Creasy,* 640 F.2d 843, 853 (6th Cir.1981) (AFDC benefits).

**8.** *See, e.g., Druker v. Commissioner of Internal Revenue,* 697 F.2d 46, 50 (2d Cir.1982), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983); *Mapes v. United States,* 576 F.2d 896, 901, 217 Ct.Cl. 115, *cert. denied,* 439 U.S. 1046, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978) ("elevated tax burden might in fact dissuade some couples from entering into matrimony, but that does not present an insuperable barrier to marriage. More often it changes the relative attrac-

tion of different prospective spouses for the tax-minded individual wishing to marry...."); *Ensminger v. Commissioner of Internal Revenue,* 610 F.2d 189, 193 (4th Cir.1979), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2166, 64 L.Ed.2d 796 (1980) (IRS's disallowance of dependency deduction by unmarried couple not subject to strict scrutiny, citing *Jobst* ).

**9.** The Supreme Court has since characterized *Jobst* as a case involving "legislation providing governmental payments of monetary benefit that has an incidental effect on a protected liberty." *Califano v. Aznavorian,* 439 U.S. 170, 177, 99 S.Ct. 471, 475, 58 L.Ed.2d 435 (1978).

**10.** The court in *Moran v. Beyer,* 734 F.2d 1245 (7th Cir.1984), observed that while "the courts have come to confer this heightened protection upon certain decisions relating to marriage," "not every choice made in the context of marriage implicates the privacy and family interests which make certain marital decisions fundamentally important." *Id.* at 1246 (citing *Jobst; Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (right to marry); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (right to divorce); *Skinner v. State of Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (contraception); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (family relationships); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (child rearing and education)).

ulatory interference is not sufficiently *direct* to invoke strict scrutiny.

Accordingly, strict scrutiny will not be applied here. It remains to be determined whether the statute survives the rational basis test. "Under traditional equal protection analysis, a legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). In applying the rational basis test, a court may not substitute its own "personal notions" of good public policy for those of Congress; merely because a classification is "imperfect" does not render it unconstitutional. *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981). Nonetheless, the rational basis standard is "not a toothless one." *Id.* at 234, 101 S.Ct. at 1082 (citing *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976)). For the reasons set forth below, the regulation at issue is found infirm.

The government's interest in the husband-wife regulation promulgated by the Secretary of Agriculture must be viewed in the context of crop subsidy program enacted by Congress in 1970. Agricultural Act of 1970, Pub.L. 91–524, 91st Cong., 1st Sess., 84 Stat. 1358; *Moreno,* 413 U.S. at 533, 93 S.Ct. at 2825. The congressional intent behind the crop subsidy program is clearly expressed in the legislation itself— to exert governmental control over the supply and price of certain primary crops by strategically reducing the amount of planted acreage. When the subsidy program was enacted, the Chair of the House Agricultural Committee, Representative Poage, explained that the subsidy payments were necessary to encourage participation in the program: "The whole success of the program is based on participation.... The only way that you can get a balance between supply and demand under this bill is through widespread participation in the program." 116 Cong.Rec. 27452 (Aug. 5, 1970). Defendants concede that "[w]hile traditional free market economists would

decry [the government's] interference with the free market forces of supply and demand, it has been the policy of the United States since at the least the enactment of the Agricultural Adjustment Act of 1937 during the New Deal to protect agricultural prices at government expense, in order to supplement the income the farmer receives by harvesting and selling his crops." Defendants' Motion for Summary Judgment, at 3.

Providing this statutory mandate as guidance, Congress delegated the task of determining eligibility requirements for the subsidy program (by *inter alia* defining the term "person") to the Secretary of Agriculture. Congress gave no indication, however, that distinctions among beneficiaries should be drawn along lines of marital status. The only legislative history addressing the husband-wife rule is "draft regulations" proposed by Representatives Conte and Findley, which were designed to prevent evasion of the subsidy limitation "through such devices as subdivision of farms." 116 Cong.Rec. 27141 (Aug. 4, 1970). The "draft regulations" provided that partnerships, corporations, associations, estates or trusts, joint tenancies, and family trusts were to be considered as single producers. *Id.* The "draft regulations" also provided that "Husband and wife shall not be considered as separate producers nor recognized in any other capacity...." *Id.* at 27142. Defendants seize on the proposed amendment as evidence of Congress's concern that married couples could easily evade the crop subsidy limitation. Unadopted amendments, however interesting, provide little useful evidence of legislative intent. For one, defendants concede that the Conte–Findley amendment was not adopted, and thus, implicitly, rejected. While defendants suggest that the only reason Congress failed to enact a husband-wife rule was that the proposed amendment had too low a payment limitation, this attempt to divine the motives of Congress is too speculative. Congress' ultimate action on this issue— *i.e.,* not enacting such a rule—is the most authoritative source for determining intent.

Instead of setting forth specific rules, Congress gave the Secretary authority to prescribe such regulations as were necessary "to assure a fair and reasonable application of the limitation." 7 U.S.C. § 1308(5). Thus, the "legitimate government interest" as expressed in Section 1308 is to insure that the crop subsidy program is fairly and reasonably applied.[11] The analysis turns next to the question of whether the Secretary's regulation is rationally related to this legitimate governmental interest.

■ Defendants contend that the husband-wife rule is rational because it prevents evasion of the crop subsidy limitation. Examination of this argument, however, in light of Congress's intent that participation in the program be encouraged while at the same time insuring that payments are fairly and reasonably made, shows that the husband-wife rule is not rationally related to this legitimate governmental purpose.

Excluding a particular group of farmers, *e.g.*, married women, who otherwise might qualify for participation in the program were it not for their marital status undermines the basic purpose of reducing the quantity of planted acreage of certain crops. For example, two married farmers with separately owned farms could have twice as much otherwise qualified acreage in production as two unmarried farmers with separately owned farms, even if these latter individuals were cohabitants or divorced. Thus, the husband-wife rule operates to allow supply in excess than that intended by Congress. Where a regulation works against the core purpose of government action, it is not rational. *See Moran*, 734 F.2d 1245 (holding unconstitutional Illinois' interspousal tort immunity statute as not rationally related to purpose of maintaining marital harmony).

Further indication of the lack of rational basis for the husband-wife regulation is Congress' recent adoption of legislation that would expressly require the Secretary to allow couples who separately owned their farms prior to and during marriage to receive separate payments.[12] Omnibus Budget Reconciliation Act of 1987, Pub.L. 100–203, 101 Stat. 1330. While the new regulations would also require that husband and wife otherwise be treated as one person, that does not resolve the issue of whether the Secretary was correct in promulgating such a regulation prior to this most recent expression of intent. That Congress has amended the regulations for future crop years strongly suggests that the present regulation is not consistent with congressional intent that the regulations be promulgated fairly and reasonably.

It is also wholly unpersuasive to argue, as defendants do, that Section 795.11 is rational because the farming operations of married couples are always economically interdependent, and therefore, it is futile or too expensive to bother distinguishing among them. First, the government does not dispute that some, though certainly not all, spouses with farming operations would both be able to qualify for crop subsidy limitation in the absence of the husband-wife rule.[13] Plaintiff's representation that some of its members are adversely affected by the rule is unchallenged. The most

---

11. The other possible "interest" behind the rule could, arguably, be some belief that, as a governmental policy, married individuals should not be recognized as independent agricultural producers. Defendants do not suggest this rationale; it would indeed clearly not be a *legitimate* governmental interest. The government may not seek to enforce stereotypical notions of proper family conduct through exclusions from benefit programs. *See United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (not legitimate purpose to exclude politically unpopular group from benefit program).

12. This amendment is discussed further below with regard to defendants' motion to dismiss for mootness.

13. As discussed *infra*, the government's estimate that crop subsidies would increase by $182 million without the husband-wife rule, *see* Declaration of Wayne Bjorlie, appears based on faulty assumptions. Plaintiff readily admits that not all married farming couples would qualify for a second payment given the other eligibility criteria already set forth in the regulations.

obvious example of unfairness is where, prior to marriage, both spouses owned and operated separate farms, and both received crop subsidy payments.[14] Even had they maintained the separation of their farms after marriage, both individuals could not continue to receive payments under Section 795.11. Although this was the fact situation in *Martin*, 639 F.2d 647, the court nonetheless found the regulation rational because of the "economic interdependency of married couples." This Court finds this conclusion wholly unpersuasive. While marital status might be a relevant test of economic dependency for other statutory purposes, *see, e.g., Jobst*, 434 U.S. at 54, 98 S.Ct. at 99 (allocation of disability benefits), it is plainly irrelevant under the crop subsidy program. Indeed, the Secretary has seen fit to not make such stereotypical assumptions with regard to other economically dependent entities, *e.g.*, partnerships, and instead created substantive criteria for them to meet in order to be eligible for payments. Rationally, the same analysis should apply to married couples.

Plaintiff also argues that treating a husband and wife as one person is illogical as a matter of plain statutory language. Even though Congress did not explicitly define the term "person" and delegated this task to the Secretary, it is, nonetheless, worth noting as persuasive plaintiff's argument that the plain and ordinary meaning of the term "person" requires rejection of the archaic notion that husbands and wives are one "person." *See also Eisenstadt*, 405 U.S. at 453, 92 S.Ct. at 1038 ("the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup"). The plain meaning of the statutory language is entitled to great weight. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985).

The government's other suggestion that the automatic bar of Section 795.11 mini-mizes fraud on the crop subsidy program is also unsupported. The government has not adequately explained how married couples could defraud the program given the substantive eligibility criteria—interest, contribution, responsibility, and active engagement—set out elsewhere in the regulations. Nor have defendants explained why they pinpointed married couples as such significant potential sources of fraud (thus requiring an absolute rule) rather than other related "persons" (e.g., adult family members or farming partnerships) that could similarly, under defendants' logic, have incentives to evade the maximum payment limitation. Mere assertions of the potential for fraud are insufficient to find a classification rational. *See Moreno*, 413 U.S. at 535, 93 S.Ct. at 2826 (food stamp program's definition of "household"). Defendants have not suggested that these present criteria are ineffective in weeding out unqualified applicants for the subsidy program. The agency judgment embodied in these regulations is that a straightforward factual inquiry into the economics of the farming operation is an effective means of achieving the goals of the crop subsidy program.[15] In contrast, an automatic exclusion ignores the value of such an inquiry. *See Israel*, 785 F.2d at 742 n. 8 ("A factual inquiry into the legitimacy of the marriage ... speaks more pointedly and straightforwardly to the state's interest...."). Furthermore, the existence of other qualitative criteria undermines the government's position that Section 795.11 was intended to prevent these same potential abuses and refutes the argument of administrative burden since such "costs" are already being willingly incurred by the government in evaluating the applications of non-married farmers. *See Moreno*, 413 U.S. at 537, 93 S.Ct. at 2827.

Finally, the government does not dispute that the existing regulatory scheme may allow the more clever and financially able farming couples to circumvent the hus-

---

14. It is this most obvious unfairness that Congress has recently sought to correct starting in the 1989 crop year. *See infra.*

15. For a discussion of the scrutiny applied by the government to applications for crop subsidy program by related farmers, see, *e.g., Esch v. Lyng*, 665 F.Supp. 6 (D.D.C.1987) (explaining application process and review procedures in context of nine siblings seeking separate "person" status).

band-wife rule by creating partnerships or corporations. While this may mean that some married couples are currently avoiding (legally) the consequences of the husband-wife rule, this only underscores its lack of rationality and suggests that the burden of the rule is falling on those farmers least financially capable of maintaining their farms without it. This type of inequity is similar to the one the Supreme Court found intolerable in *Moreno:* "Thus, in practical operation, the 1971 amendment excludes from participation in the food stamp program, *not* those persons who are 'likely to abuse the program,' but, rather, *only* those persons who are so desperately in need of aid that they cannot even afford to alter their living arrangements as to retain their eligibility." 413 U.S. at 538, 93 S.Ct. at 2827.

In short, the husband-wife rule, while not a direct and substantial enough interference with the right to marry to invoke strict scrutiny, is nonetheless unconstitutional because it is not rationally related to achievement of the legitimate government purpose behind the crop subsidy limitation program.

This finding that the classification based on marital status does not have a rational basis obviates the need to address the merits of plaintiff's alternative constitutional challenge on the basis of gender.

## B. Administrative Procedure Act

Plaintiff's final attack on Section 795.11 is that it violates the APA both because it is arbitrary and capricious agency action and because the regulation promulgated is in excess of the agency's statutory authority. 5 U.S.C. § 706.

Courts can "hold unlawful and set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Oklahoma Aerotronics v. United States,* 661 F.2d 976, 977 (D.C.Cir.1981). While review is limited, "the Supreme Court has cautioned that courts must not 'rubber stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *United States Army Engineer Center v. Federal Labor Relations Authority,* 762 F.2d 409, 414 (4th Cir.1985) (citing *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983)). Application of this test in this case is, to a large extent, similar to the constitutional rational basis test. *See Wawszkiewicz v. Department of the Treasury,* 670 F.2d 296, 301 (D.C.Cir.1981).

■ Where the dispute is not over statutory interpretation, but one of whether the agency has exceeded its statutory authority, the agency's mandate must be examined. As concluded above in the discussion of the regulation's constitutionality, the policy of completely barring married couples from qualifying for two payments operates against the congressional policy of encouraging participation in the crop subsidy program and insuring that this policy is implemented fairly. Agency action that is inconsistent with the statutory mandate and that frustrates congressional policy cannot be upheld. *Specialty Equipment Market Ass'n v. Ruckelshaus,* 720 F.2d 124, 132 (D.C.Cir.1983); *Planned Parenthood Federation of America, Inc. v. Heckler,* 712 F.2d 650, 655 (D.C.Cir.1983). Defendants invite the Court to defer to the agency's interpretation of its statutory mandate to define "person." While limited deference is due, *Office of Communication of United Church of Christ v. FCC,* 707 F.2d 1413, 1422-23 (D.C.Cir.1983), if Congress has not directly addressed the precise question at issue, "the question for the courts is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see also Japan Whaling Association v. American Cetacean Society,* 478 U.S. 221, 106 S.Ct. 2860, 2868, 92 L.Ed.2d 166 (1986).

Defendants also argue again that Section 795.11 is not contrary to express legislative intent because Congress was concerned about preventing farmers from evading the payment limitation. Without the husband-wife rule, defendants suggest, the govern-

ment would have to evaluate a couple's individual applications; defendants estimate that the additional cost to the government from adding more "persons" to the program would be approximately $182 million. Declaration of Wayne Bjorlie. This figure, however, appears to be a gross overestimate; it is based on the faulty assumption that all married farmer couples could qualify for a second crop subsidy payment. *Id.* ¶¶ 4, 5. This clearly would not be the case. Even assuming the figure were accurate, defendants have not shown that the potential for increased cost to the government can save an otherwise unconstitutional or improper regulation. In addition, the government has not supported its suggestion that evaluating the applications of married couples for separate payments would create a significant administrative burden.

A further infirmity with the agency's action is its failure to "cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 48, 103 S.Ct. 2856, 2869, 77 L.Ed.2d 443 (1983). Here, defendants have not submitted any administrative record indicating what deliberations prompted the Secretary to promulgate the husband-wife rule. Instead, defendants offer the current rationalizations for the rule as well as a questionable estimate of the cost to the government if the rule were abolished. These are entirely unpersuasive. *Motor Vehicle,* 463 U.S. at 50, 103 S.Ct. at 2870 (regulation must be upheld on basis articulated by the agency, not counsel's *post hoc* rationalizations). In the absence of a record explaining the agency's reasoning behind promulgating the regulation, it is difficult to discern its rationality. The logic of an absolute prohibition on qualifying married individuals as farmers in his or her own right appears only to be based on the assumption that married women are never farmers in their own right. Defendants, understandably, do not now suggest such a frail argument.

Defendants contend finally that Congress' failure (until the recent legislation) to change the husband-wife rule by amendment indicates its contentment with the regulation. *North Haven Board of Education v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982) (quoting *United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1979)). This argument is belied by Congress' own recent action in amending Section 795.11. That agency practices are long-established does not alone shield them from judicial review. *Securities and Exchange Commission v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978) (rejecting regulation in effect for 17 years).

In sum, the regulation promulgated by the Secretary is not consistent with the agency's statutory mandate to interpret the term "person" fairly and reasonably in accordance with the congressional mandate to encourage participation in the farm crop subsidy program. Therefore, Section 795.11 violates the APA and cannot stand.

### III. MOOTNESS

■ In their motion to dismiss, defendants claim that the recent amendment to 7 U.S.C. § 1308, enacted as part of the Omnibus Budget Reconciliation Act of 1987, moots this action. The new statute provides:

Such regulations shall provide, that with respect to any married couple, the husband and wife shall be considered to be one person, except that any married couple consisting of spouses who, prior to their marriage, were separately engaged in unrelated farming operations, each spouse shall be treated as a separate person with respect to the farming operation by such spouse so long as such operation remains as a separate farming operation, for the purposes of the application of the limitations under this section.

Section 1303(a)(2)(B)(iii), 133 Cong.Rec. H12108 (Dec. 21, 1987). The Secretary is required to promulgate final regulations implementing the amendments by August 1, 1988. Section 1305(a)(1)(A) and (B), *id.* The amendment is not effective, however,

until the 1989 crop year. Section 1301(a), *id.*

Defendants argue that the amendment moots this case both as a matter of law and as a matter of prudence. Neither argument is availing. The amendment will not be effective until the 1989 crop year. Until then, the present regulations apply and clearly are adversely affecting plaintiff's members.

As a prudential matter, defendants suggest this action should be dismissed because any decision of this Court is certain to be appealed and by the time the appellate court could review the regulations, the new regulations would be in effect. That argument concedes that this case is not mooted by the new amendments. Indeed, defendants acknowledge that this case "is not technically moot because the husband and wife regulations will be applicable for one more crop year."[16] In addition, it would be inappropriate for this Court, faced with a live controversy, to stay its hand merely in anticipation that its decision might be appealed and might, on appeal, be partially mooted by the implementation of the new regulations.[17] Defendants' suggestion that "whatever decision this Court had made concerning [the regulation's] validity and constitutionality will have to be vacated"[18] under the principle announced in *United States v. Munsingwear,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–107, 95 L.Ed. 36 (1950), is entirely speculative. This case is neither moot, nor should it be treated differently than any case where legislation will, at a future date, change the regulatory scheme. *See Mississippi River Transmission Corp. v. FERC,* 759 F.2d 945, 952 n. 9 (D.C.Cir.1985) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *Save Our Cumberland Mountains, Inc. v. Clark,* 725 F.2d 1422, 1431–32 (D.C.Cir.1984).

16. Defendants' Motion To Dismiss, at 5.

17. This Court, of course, cannot reach the issue of the validity of the new regulations. However, since the new legislation adopts the Secretary's husband-wife rule, with one major exception, similar if not identical constitutional issues to those presented in this litigation might be raised were the new statute to be challenged.

## IV. CONCLUSION

For the reasons set forth above, it is accordingly hereby

ORDERED that defendants' motions to dismiss and for summary judgment are denied, and that plaintiff's motion for summary judgment is granted; it is

FURTHER ORDERED that Section 795.-11 is declared unconstitutional, null, and void as a burden on the right to marry that is not rationally related to a legitimate government interest; it is

FURTHER ORDERED that defendants, their officers, employees, and agents, are permanently enjoined and restrained from refusing to allow husbands and wives to qualify as separate persons on the basis of Section 795.11; and it is

FURTHER ORDERED that the effect of this Memorandum Opinion and Judgment is stayed until April 18, 1988 to afford the parties opportunity to seek appellate relief.

IT IS SO ORDERED.

The amendments remove plaintiff's constitutional objections in only two respects that do not significantly affect the constitutional analysis: the new husband-wife rule is clearly now enacted by Congress and not by the agency, and the amendment removes the obstacle for one group of married farmers (those who owned farms separately before and after marriage).

18. Defendants' Motion To Dismiss, at 4–5.